# W. C. Mobley et al., Exrs. of Fullerton Parker, Deceased, Plffs. in Err., *v.* William Morgan.

In the case of breach of contract for the purchase of stock in a limited partnership, occasioned by the purchaser's refusal to accept the stock, the seller is not compelled, where the stock has no known market value, to sell it on the market for the best price obtainable and measure his damages by the difference between the price thus obtained and the contract price; but he may recover from the purchaser the price agreed to be paid for the stock, with interest from the time of the breach.

A contract for the sale of stock in a limited partnership is not void as being against public policy or good morals, because it contains a stipulation that the seller shall hold the stock until after a partnership election and vote on it as the purchaser shall desire.

(Decided November 1, 1886.)

Argued October 12, 1886, before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. October Term, 1886, No. 84, W. D. Error to the Common Pleas of Armstrong County to review a judgment on a verdict for plaintiff in an action to recover damages for a breach of contract. Affirmed.

The case is fully stated in the following charge to the jury in the court below by NEALE, P. J.:

"This action is brought by William Morgan against the executors of Fullerton Parker, deceased, to enforce an alleged contract entered into between the two parties, William Morgan and Fullerton Parker. It appears that there was a glass works at Parker, and may be there yet; it was a partnership, under what is known in the law as a limited partnership. That is a partnership where the parties are protected from liability beyond

NOTE.—Where there is a breach of a contract of sale by vendee the damages are measured by the difference between the contract and market price at the time and place of delivery (Corser v. Hale, 149 Pa. 274, 24 Atl. 285; Guillon v. Earnshaw, 169 Pa. 463, 32 Atl. 545; Newport & S. Valley R. Co. v. Seager, 19 Pa. Co. Ct. 465); and not the contract price (Rhey v. Ebensburg & S. Pl. Road Co. 27 Pa. 261); unless there be no market value, as in MORLEY v. MORGAN.

See also note to Southwest Coal & Coke Co. v. Warden, 1 Sad. Rep. 102.

the value of their interest in the property, or under certain limitations at least, so that a man, when he becomes interested in one of those limited partnerships, does not risk his whole estate, as he does in a general, ordinary partnership concern. His liability is only limited. It is in some respects a sort of corporation, and has some of the privileges of a corporation.

"Now, it seems that this plaintiff was the owner of certain shares of stock of that limited partnership, namely, ten shares, the par or original value of which was $500. That amount he seems to have paid for his ten shares, and obtained a certificate evidencing his ownership of those ten shares. About the month of July, 1882, there was to be an election of officers and managers of that partnership, and it seems to have been the desire of certain persons in Parker to get control of the stock of that partnership. The stock at the time seems to have been depreciated. It did not maintain its full value at that time, and Mr. Duff, who has been on the stand, in speaking to Mr. Parker suggested that the plaintiff had stock in the partnership. It is not in evidence that he specified how much stock he had, but that he had stock. Mr. Parker was himself a stockholder in that partnership, and he may or may not have known the amount of stock held by Mr. Morgan.

"You will remember what occurred with reference to that purchase from Mr. Morgan. Mr. Duff, it seems, was averse to buying it on his own account, and made some suggestion to Mr. Parker that he should buy it. Mr. Parker, it seems, agreed to buy it and, if I am correct in my recollection of the testimony, sent Mr. Duff to Mr. Morgan with reference to the purchase, who then returned to Mr. Parker, and was once or twice between the parties making or negotiating the sale.

"Now we have to define right here what would amount to a contract and sale. A contract in law is when parties agree for a consideration to do or not to do a certain thing, or to deliver a certain article for a valuable consideration. Contracts should be mutual. What binds one in a contract should also bind the other. There may be executed contracts, that is, where all the parts of the contract are fully performed; or there may be executory contracts, that is, where some part of the contract remains to be performed. At the time when the part which is to be performed has been performed, then the contract becomes, complete, and the parties are bound by it. You will take into consideration, gentlemen, under all the evidence here, whether

there was an actual contract entered into between Mr. Parker and Mr. Morgan. Mr. Duff, it seems, had full power to negotiate that transaction, that business. He was the agent, as it were, of Mr. Parker, and he also became the agent of Mr. Morgan.

"Now what was the fact? Was there an actual bona fide sale made of that stock to Mr. Parker? Did Mr. Morgan agree to deliver and transfer to Mr. Parker that stock? And did Mr. Parker agree on his part to accept the stock and pay the consideration named for it?

"If you find that to be the case, and all of the terms were complied with on the part of Mr. Morgan that he was bound to comply with, and that Mr. Parker failed on his part formally to pay the consideration, it would be your duty under all the evidence to find a verdict for the plaintiff. If, on the other hand, there remains anything to be performed on the part of Mr. Morgan, which he did not perform, that he failed to perform, then he cannot in this action recover. A contract must be of a mutual character; both parties are bound to perform their respective parts. If Mr. Morgan failed in the performance of any part of his, which was mutual and essential, in carrying out the contract, and giving Mr. Parker the full enjoyment of all he engaged to, then Mr. Morgan cannot recover in this action; but if he did perform every part of the contract, and Mr. Parker received the benefit of all that he was to do, and failed on his part to pay the consideration that he bound himself to pay, if you find that he did, it is the duty of the jury in this case to find a verdict in favor of the plaintiff.

"We may state to you, gentlemen, that it is in evidence that one part of this contract was the voting or taking some part at the ensuing election. Mr. Morgan was to do that. You will ascertain, gentlemen, from the evidence in the case, whether he did do that in full compliance with the agreement which he made and entered into. If he did not, then he did not comply with one branch of his contract. It will be for you to say whether he did or did not. You have the evidence of Mr. Morgan on that subject, and you will remember what he said.

"Then we may say to you that another part of the duty of Mr. Morgan, if he was entitled to compensation for this stock, was to make a tender or offer of it to Mr. Parker. Did he do that? He must do it in a reasonable time. He could not stand by and see the stock go down day after day and week after week and then, when he found it had become utterly worthless, go and

offer to give the stock to Mr. Parker, when Parker would not have the benefit from it which he might have had if the tender had been made within a reasonable time; but he may be excused from making that actual tender of the stock, by the act or actions of Mr. Parker, and you will recollect the evidence upon that branch of the case. You will say whether he was precluded or excused from making a tender of the stock by the act or conduct of Mr. Parker. You will recollect the testimony of Mr. Duff upon that subject. That Mr. Morgan called upon him shortly after this and asked him about the stock, and something was said about his going to see Mr. Parker himself. Mr. Duff desired to refer Morgan directly to Parker, yet he went, I believe, and the evidence discloses the fact that he did not have a very full conversation with him there, and shortly afterwards he spoke to Mr. Parker and told him that Morgan wanted him to take the stock and that Parker said to let him keep the stock.

"Now, gentlemen, was that a refusal on the part of Mr. Parker to take that stock? Did Mr. Parker then and there so persistently decline taking it, that it dispenses with the necessity, on the part of Mr. Morgan, to follow up that sale, if it was a sale, with the tender of a transfer of the certificates? Because unless this stock was transferred to Mr. Parker, it would be worthless to him. Mr. Morgan would be bound to transfer it, either upon the certificates or upon the books of the company. Was he excused from that? That will be for the jury. He should have followed up his tender within a reasonable time, or else have shown an excuse for not doing so.

"It seems that some time afterwards, within a year, there was a direct offer made of the stock to Mr. Parker, and at that time he absolutely refused to accept it. It is not detailed in that conversation that there had been any prior, direct offer of the transfer of the stock made to Mr. Parker. It will be then for you, under all the evidence, to say whether Mr. Morgan within a reasonable time did make such a tender of the stock as was proper that should have been made to Mr. Parker under all the circumstances, and in compliance with the terms of the sale, and whether Mr. Parker enjoyed the benefits of that purchase. If Mr. Parker, by his own act, precluded such a tender, why, that would be a sufficient excuse to Mr. Morgan. Morgan was not bound to run after the man if he would not take it from him, but he ought, before suit was brought, certainly to have

made such a tender as would have put it in the power of Mr. Parker to enjoy the fruits of his purchase, if he made one.

"This seems to the court to be about all that is necessary for us to instruct the jury upon. I raised the question myself (because it seemed an important one), that the suit might not be maintained, because it would be against public policy; but upon reflection I don't see why it could not be sustained on that ground.

"When a contract is entered into between parties that has in its purpose the defrauding of certain other parties, the law will not justify a recovery, because it would be encouraging fraud, dishonesty; but here there is no evidence that any fraud was intended to be perpetrated as to anybody. There is no evidence of any purpose of dishonesty in the transaction, so far as I can see, after reflecting upon the case pretty fully. Mr. Parker may have been anxious to protect his own interest, and in order to protect his own interest, he may have been anxious to have some stock of Mr. Morgan as an additional security, giving to him a greater amount of interest in the partnership, and thereby enable him to better control or promote his own interest in that partnership. So that upon that point we think that this was not against public policy, and upon that account you would have no reason to find for the defendant.

"[Should you come to the conclusion that the plaintiff is entitled to recover in this action, it will be for you to say what amount he is entitled to recover. That question has been argued with very great force by the counsel for the defendant, alleging that it was the duty of the plaintiff, immediately after the refusal to take the stock on the part of Mr. Parker, to go upon the market and sell it for the highest price it would bring, and that then the difference between the price that Mr. Parker agreed to give for the stock and the price received for it would be the amount of damages that Mr. Morgan would be entitled to sus- tain. That is to say, that if Mr. Morgan had sold the stock for $100 and received that amount from that sale, the difference being only $100, that would be the amount of damages he would be entitled to sustain. I am taking it upon the hypothesis that he is entitled to recover, because that is for the jury under all the evidence.

"We instruct you that this is not the correct criterion in this case. It might be the case if this were a kind of stock that was

marketable. If it could readily be put upon the market and sold at any time, then it would have been his duty, we instruct you, to have offered it for sale and made an open, an honest, sale of the stock, and after selling it, then to bring his action for the difference in the price that he was to receive from Mr. Parker and the price actually received at such sale. But this is of a different character from the kind of stock that seems to be within the rule that Mr. Buffington has shown. At least I take it to be so. It was only at best an interest in this partnership, and such interest did not have any known market value; and it may be that some one individual at a particular time did offer to buy all the stock that he could purchase at a certain figure, but that is only one instance we have, and it is the only thing going to show that there was any marketable value whatever for this stock. Now the object of the individual making that offer we don't know. It is not disclosed by the evidence that there was any such offer kept open for the stock of that partnership. So that we now instruct you that it was not necessary on the part of this plaintiff in order to entitle him to recover in this suit to have made such disposition of that stock which he held in that limited partnership concern.

"If you find for the plaintiff, that he is entitled to recover the full amount, you may fix the price that was agreed to be paid for that stock as the bare sum, and you may add to that the interest upon that sum to this date from the time when there was a breach of the contract on the part of Mr. Parker, whatever date you find that breach to have occurred; whether it was at the time when he refused to take the stock from Mr. Duff or whether it was at a subsequent time, when the actual tender of the transfer of the stock was made to him, if you find that there was such a tender.]

"All the facts in this case are for you. If in our explanation of the law we have misstated any of the facts you will correct our misstatement. Having stated the law as we have, we submit the case to the jury."

Defendants, *inter alia,* presented the following points:

4. That the sale being an executory one and the stock never having been delivered an action will not lie for the purchase money. The proper remedy is an action for damages for non-acceptance of the stock.

5. That the present suit, being a "demand for $200 for stock, ten shares, in the Parker Glass Company, sold to the defendant, with interest from July 12, 1882," will not lie, and the verdict of the jury must be for the defendants.

9. That if the plaintiff is entitled to recover, the proper measure of damages is the difference between the contract price of the stock and the market value of the stock at the time of the breach of the contract, which breach would occur if Morgan, within a reasonable time after the said election, tendered the stock to Parker and Parker refused to accept it.

10. That the agreement in this case, if believed, is void as being against public policy and an evasion of the limited partnership act.

Verdict was rendered for the plaintiff, upon which judgment was entered; and defendants took this writ, assigning as error the portion of the charge embraced in brackets and the action of the court in refusing their fourth, fifth, ninth, and tenth points.

*Buffington & Buffington,* for plaintiffs in error.—Where. the vendor must do anything to put the goods in a deliverable state, the contract is executory. Benjamin, Sales, pp. 229, 235; Fuller v. Bean, 34 N. H. 301; Story, Sales, p. 478, § 389.

Where the vendor has not transferred the goods to the buyer, the remedy, in case of refusal to accept, is only by way of damages. Benjamin, Sales, 617.

These damages are the difference between the then value of the stock and the contract price. Worthen v. Wilmot, 30 Vt. 555; Laubach v. Laubach, 73 Pa. 390; Bowser v. Cessna, 62 Pa. 150; Andrews v. Hoover, 8 Watts, 239; 1 Sedgw. Damages, 450.

The present suit being for purchase money cannot be maintained. Caldwell v. Thompson, 1 Rawle, 370; Owen v. Shelhamer, 3 Binn. 45.

Contracts are illegal when founded on a consideration *contra bonos mores,* or against the principles of sound policy, or founded in fraud or in contravention of the positive provisions of some statute law. 2 Kent, Com. 466.

The same principle is decided in Balliet's Case, 1 Legal Chronicle, 195. See also Hibernia Turnp. Road Co. v. Henderson, 8 Serg. & R. 219, 11 Am. Dec. 593; Maybin v. Coulon, 4 Dall. 298, 1 L. ed. 841; Thorne v. Travelers Ins. Co. 80 Pa. 28,

21 Am. Rep. 89; Spurgeon v. McElwain, 6 Ohio, 442, 27 Am. Dec. 266; Law v. Hodgson, 2 Campb. 147; 1 Addison, Contr. § 260; and specially, Ohio Life Ins. & T. Co. v. Merchants' Ins. & T. Co. 11 Humph. 1, 53 Am. Dec. 742.

*James P. Colter,* for defendant in error.—The jury is bound by a measure of damages where there is one, but not always by a particular means of ascertainment.    The measure in a case like the present is the difference between the price contracted to have been paid, and the value of the thing when it ought to have been accepted.    Andrews v. Hoover, 8 Watts, 239; Girard v. Taggart, 5 Serg. & R. 19, 9 Am. Dec. 327.

Where goods are sold on credit, the vendee to give his note, which he refuses to do after the goods are delivered to him, an action may be maintained for a breach of the contract before the expiration of the credit in which the measure of damages is the price of the goods.    Rinehart v. Olwine, 5 Watts & S. 157.

OPINION BY MR. JUSTICE GREEN:

We think all the facts of this case essential to the plaintiff's right of recovery, and to the defense set up by the defendants, were very fairly and clearly submitted to the jury by the learned court below.    Upon those facts the jury has found for the plaintiff upon ample testimony.    It was a part of the contract that the stock was not to be delivered till after the approaching election for directors.    Hence, Morgan was not bound to tender the stock till after the election.    Within a reasonable time thereafter he applied to Duff, the agent through whom the stock was sold, to know whether Parker would take the stock, and as Parker was then sick or absent, Morgan waited a few weeks and then again applied to Duff to know when Parker would take the stock.    Duff saw Parker and told him Morgan's wish and Parker replied "Let him keep it."    This was a refusal by Parker to take the stock.    Subsequently Morgan executed a transfer of the stock to Parker, but it does not appear by the testimony whether it was tendered to Parker in this condition or not, at least not until the trial before the justice, when it was produced and offered for delivery.    But the proof of Parker's refusal to take the stock was uncontradicted, and the only question left was the question of damages.

The court refused to instruct the jury that it was necessary

for Morgan to sell the stock on the market for the best price he could get, and that the measure of damages would be the difference between the price thus obtained and the contract price, and this refusal is assigned for error.   Of course the seller would be at liberty after tender and refusal to adopt this course, but it was not essential to his right of action.   The measure of damages was the difference between the market price of the stock at the time of the breach and the contract price.   This is the ordinary rule; but there was evidence that the stock had no value, and there is no certainty, indeed no proof, that upon a resale any price could have been obtained for the stock, or that it had any market value when Parker finally refused to take it.   In these circumstances we see no reason why the price agreed to be paid should not be adopted as the measure of damages if that was the only mode by which full compensation could be made for the breach of contract by the purchaser.   Under the charge we must assume that the facts bearing upon this subject and establishing this result were found by the jury, since the case was so left to them.

In Rinehart v. Olwine, 5 Watts & S. 162, ROGERS, J., said: "In the same case [Girard v. Taggart, 5 Serg. & R. 19, 9 Am. Dec. 327,] it is decided that the price of the goods is the measure of damages.   The plaintiff has the right to be placed in the same situation he would have been in had the defendant complied with his contract."

The present action originated before a justice of the peace, and there were no final pleadings; and hence it cannot be said this was not an action to recover damages for breach of contract.

We see nothing illegal or contrary to good morals in the stipulation that Morgan should hold the stock till after the election and vote on it as Parker desired.

Judgment affirmed.