## TAYLOR ET AL. *v.* GROSS

[No. 243, September Term, 1971.]

*Decided March 9, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Michael L. Schwartz,* with whom was *David Freishtat* on the brief, for appellants.

*Paul Walter,* with whom were *William C. Sammons* and *Tydings & Rosenberg* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

In a trial before Judge Dyer sitting without a jury to recover damages for breach of contract, the appellee Gross proved that he and the appellants, Mr. and Mrs. Taylor, entered into a written agreement under which the Taylors promised to buy from Gross 9980 shares of stock he owned in a corporation named American Continental Industries, Inc. (ACI) at a price of $10.00 a share; that he duly tendered the stock to the Taylors and that they refused to live up to their agreement and did not consummate the purchase of the stock. The Taylors offered no defense or rebuttal to the proof that they had breached their contract, relying entirely on a claim that Gross had not properly established the amount of his loss.

Judge Dyer entered judgment for Gross in the amount of $99,800—9980 times $10.00—plus an attorney's fee of $5,000 (the contract provided that in the event of its breach by the Taylors, they would pay "reasonable attorney's fees"). Judge Dyer's findings on which the judgment for the loss was based were these:

> "In the instant case, the breach of the agreement occurred in the late spring of 1968. An effort was made by the plaintiff to sell his stock and fix a value thereof during the summer of 1968 by placing in a broker's hand for disposal,

with no success. The bankruptcy of the corporation in question occurred in the fall of 1968.

"It seems that the plaintiff did all that could be done to ascertain a standard of damages other than that fixed in the agreement. Since the plaintiff was unable to determine a value of the stock at the time of the breach of the agreement and up to and including the date of bankruptcy of the corporation, then the agreement must control. Therefore, the only value of the stock is that determined by the parties themselves, and that is $99,800.00."

The contentions of the Taylors are that the true measure of damages under the circumstances should be the difference between the agreed price and the value of the stock at the time of the breach, *Levine v. Chambers,* 141 Md. 336; that Gross did not show that the stock had no value and further did not show that he made reasonable efforts to determine the value of the stock at the time of the breach.

The decisive question in the case is controlled by the Uniform Commercial Code, Subtitle 8, Investment Securities, Code (1957, 1964 Repl. Vol.) Art. 95B, § 8-107(2)(b), which reads:

"When the buyer fails to pay the price as it comes due under a contract of sale the seller may recover the price

\* \* \*

(b) Of other securities if efforts at their resale would be unduly burdensome or if there is no readily available market for their resale." [1]

---

1. The official comment says: "Subsection (2) is designed to follow the dictum in Agar v. Orda, 264 N. Y. 248, 190 N. E. 479 (1934) in this context. Paragraph (b) is applicable where for example (i) the securities are those of a 'closely-held' corporation not dealt in on any organized market; \* \* \*."

It appears that § 8-107(2) is to a large extent declaratory of pre-existing law. See 12A Fletcher, Cyclopedia Corporations, Permanent Edition, 1957 Revised Volume, § 5630, p. 328; 18 C.J.S. Corporations § 413; Mobley v. Morgan (Pa.), 6 A. 694; Flannery

714

Gross proved that soon after the breach he personally tried to sell the ACI shares of stock and, being unsuccessful, placed the stock with Eastman Dillon Union Securities & Co., a stock brokerage house, asking them to sell it. They could not do so. ACI stock had been listed on the "over-the-counter" market but soon after the breach was "delisted"—removed from the "pink sheets" lists of stock available for sale and purchase. Then ACI was put in bankruptcy and this suit followed.

We think the testimony justified the findings of fact made by Judge Dyer and gratify the tests of § 8-107 (2) (b) of the Uniform Commercial Code that there was "no readily available market for [the stock's] resale." The consequence is that Judge Dyer correctly gave judgment for the agreed upon price. The reasonableness of the attorney's fee allowed is not challenged.

We add that at the argument the appellee formally and bindingly agreed that he would, upon payment of the judgment, deliver the 9980 shares of ACI stock to the Taylors so that they could recover the residual value they argue the stock might have had (although Gross claims the stock had no value).

*Judgment affirmed, with costs.*

v. Wessels (Pa.) 90 A. 715; Corwin v. Grays Harbor Washingtonian (Wash.), 276 P. 902.