FRANK E. AGAR et al., Copartners under the Firm Name of AGAR & Co., Appellants, *v.* MAX ORDA, Respondent.

(Argued March 8, 1934; decided April 17, 1934.)

*John N. Regan* and *Edward G. Bathon* for appellants. Shares of stock are not subject to the Sales Act (Cons Laws, ch. 41, art. 5.) (*Burrall* v. *Bushwick R. R. Co.,* 75 N. Y. 211; *Lamkin* v. *Palmer,* 24 App. Div. 255; *Denton* v. *Livingston,* 9 Johns. 96; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Jermain* v. *Lake Shore & Mich. So. Ry. Co.,* 91 N. Y. 483; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y. 599; *Plimpton* v. *Bigelow,* 93 N. Y. 592; *U. S. Radiator Co.* v. *State,* 208 N. Y. 144; *First Nat. Bank* v. *Maine,* 284 U. S. 312; *Hawley* v. *City of Malden,* 232 U. S. 1; *Jellenik* v. *Huron*

*Copper Mining Co.*, 177 U. S. 1; *Hook* v. *Toffman*, 16 Ariz. 540; *People's Bank* v. *Kurtz*, 99 Penn. St. 344; *First Nat. Bank* v. *Holland*, 99 Va. 495; *Smith* v. *Lingelbach*, 177 Wis. 170; *Guppy* v. *Moltrup*, 281 Penn. St. 343; *Henderson* v. *Plymouth Oil Co.*, 13 Fed. Rep. [2d] 932.)

*Max Orda*, in person, respondent. The provisions of the Personal Property Law, article V, apply to the alleged contract in suit. Plaintiffs have failed to bring the case within the provisions of section 144 of the Personal Property Law. (*Wills* v. *Investors Bankstocks Corp.*, 257 N. Y. 451; *Friedman* v. *Bachmann*, 234 App. Div. 267; *Bishop* v. *Tracy & Co.*, 237 App. Div. 496; *Emerson* v. *Assoc. Gas & Elec. Co.*, 148 Misc. Rep. 636; *Fitzpatrick* v. *Assoc. Gas & Elec. Co.*, 148 Misc. Rep. 538; *Walker* v. *Northern & Western Finance & Trade Corp.*, 199 App. Div. 471; *Mc Neil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Moore* v. *Metropolitan Nat. Bank*, 55 N. Y. 41; *Berney Nat. Bank* v. *Princkard*, 87 Ala. 577; *Matter of Broden*, 165 Penn. St. 184; *Nashville Trust Co.* v. *Weaver*, 102 Tenn. 66; *Griffith* v. *Watson*, 19 Kans. 23; *Union Bank* v. *State*, 9 Yerg. 490; *Waltham Bank* v. *Waltham*, 10 Metc. [Mass.] 334.)

LEHMAN, J. An action to recover the purchase price of 200 shares of stock has been dismissed. The contract of purchase and sale was executory. The buyer refused to accept delivery of the certificates when tendered.

The Sales Act (Article V of the Personal Property Law [Cons. Laws, ch. 41]) provides: " Where, under a contract to sell or a sale, *the property in the goods has passed to the buyer*, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods." (§ 144.) Even before the Sales Act was enacted, the same rule was applied in this jurisdiction to contracts to sell or sales of personal property of all kinds.

The same rule was also applied in this jurisdiction prior to the enactment of the Sales Act, to executory contracts for the sale of personal property, where payment of the price and delivery of the personal property were to be simultaneous, if the seller made proper tender of the property he had agreed to sell. (*Hayden* v. *Demets*, 53 N. Y. 426.) Here the Sales Act changed the common-law rule as formulated by the courts of this jurisdiction. In such case the seller of *goods* is now relegated to an action for damages and no action for the price will lie. " Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages * * *." (§ 145.) The question now presented is whether, since the enactment of the Sales Act, an action for the price may still be maintained upon the refusal of a buyer of stock certificates to accept delivery of the certificates, though title to the certificates had not passed to the buyer.

Concededly, if certificates of stock are " goods " within the definition of the Sales Act, the complaint was properly dismissed. It does not follow that the action for the price will lie, though certificates of stock do not fall within that definition. Prior to the enactment of the Sales Act the courts held that a seller of personal property had the same remedies, regardless of the nature of the personal property. The same rule was applied to a contract to sell the shares of stock of a construction company struggling to obtain from its friends the means to live, as well as to such personal property as is the subject of general traffic and has a market value. (*Mason* v. *Decker*, 72 N. Y. 595.) It was applied alike " where the property is grain or hops, or a horse " and " where it is an interest in a partnership." (*Van Brocklen* v. *Smeallie*, 140 N. Y. 70, 76.) The logical outcome of disintegrating exception would inevitably be, the court there said, " to confuse the rule with narrow and arbitrary distinctions; to open it to attack in numerous

directions; to make its operation fickle and uncertain; to breed needless litigation; and in the end to shatter the rule itself." The rule has been shattered by the Legislature. It no longer can be applied to contracts for the sale of " goods," and goods, as defined by the statute, include " all chattels personal other than things in action and money." (§ 156.) The problem is whether a fragment of the shattered rule still persists and is applicable to sales of certificates of stock.

Shares of stock are intangible property and, at least, for many purposes, must be regarded only as things in action; yet for practical purposes they are merged in stock certificates which are instrumentalities of trade and commerce. (*Hutchison* v. *Ross*, 262 N. Y. 381.) Such certificates " are treated by business men as property for all practical purposes." (*Lockwood* v. *United States Steel Corp.*, 209 N. Y. 375, 382.) Indeed, this court has held that the shares of stock are so completely merged in the certificate that conversion of the certificate may be treated as a conversion of the shares of stock represented by the certificate, even though the certificate was not indorsed by the owner, and after the conversion the original owner remained the record owner of the stock and entitled to all the benefit which flows from such ownership. (*Pierpoint* v. *Hoyt*, 260 N. Y. 26.) Even so, a strong argument may be made that the Legislature did not intend to include certificates of stock in its definition of " goods." Assuming that to be true, yet the fact remains that certificates of stock, like other " goods," are freely bought and sold in the market place and pass from hand to hand, and analogy so complete may dictate that the rules governing sales be applied alike to " goods " and other personal property freely bought and sold and passing from hand to hand.

It is significant that this court so applied the same rules to sales of all personal property without distinction long before the Legislature adopted the Sales Act. Since the

Sales Act was adopted, we have by analogy applied the provisions of the Personal Property Law, sections 82 and 100, governing the transfer of property in goods, to the transfer of property in certificates of stock. (*Wills* v. *Investors Bankstocks Corp.*, 257 N. Y. 451.) The common-law rules governing the sale of goods were applied without distinction to all personal property, so far as the nature of the property permitted, in order to avoid confusion with its attendant train of evils. (*Van Brocklin* v. *Smeallie*, 140 N. Y. 70.) The Legislature has changed some of these rules by the adoption of the Uniform Sales Act. It did so primarily for the purpose of promoting uniformity of rules throughout the country. By placing the rules governing the sale of " goods " in a statutory code, it shattered or destroyed general common-law rules inconsistent with the statutory code. By limiting the application of the statutory code to the sale of " goods " the Legislature gave no indication of what rule the courts should apply to the sale of other personal property. That problem it left to the courts.

The courts must formulate the rules applicable in cases not covered by the statute. The field is narrow. Inherent differences between " goods " and things in action may require at times the formulation of different rules. Perhaps that is why the Legislature excluded things in action from the scope of the statutory rules. No such differences exist here. Indeed, before the Sales Act was adopted, the courts applied the rule governing actions for the price of goods to actions for the price of other personal property *because* they found that logic and policy alike dictated that here no distinction should be drawn. The same considerations still apply now that the court is called upon to formulate the rule which shall be applied in cases not covered by the Sales Act. The formulation of the old general rule that " when the vendee of *personal property*, under an executory contract of sale, refuses to

complete his purchase, the vendor may keep the article for him and sue for the entire purchase price " (*Ackerman* v. *Rubens,* 167 N. Y. 405, 408), will no longer suffice. A formulation of the rule to confine it to contracts for the sale of choses in action creates a narrower rule which is supported by none of the considerations which induced the courts originally to adopt the original general rule. It is in effect a new rule. The fragments of the rule shattered by the Legislature are essentially different from the old common-law rule.

Even the old general common law as formulated in this State differed from the common-law rule as formulated in England and many jurisdictions in this country. (See 2 Williston on Sales [2nd ed.], § 560 *et seq.*) " It seems anomalous that the seller should be able to force title upon the buyer by simply electing to do so." (§ 566.) Every reason that might be urged against the old rule as applied to all personal property has at least equal force when urged against a narrower rule to be applied only to certificates of stock. The same reasons that make uniformity in all jurisdictions desirable in regard to sale of goods apply with like force to sale of certificates of stock. After the Legislature in the Sales Act shattered and mutilated beyond recognition the general common-law rule of this State and enacted its preferenee for the general common-law rule as applied in England and other jurisdictions to all personal property, the courts of this State should apply the same rule not only to the sale of goods, but to the sale of all personal property. Otherwise the courts without reason introduce distinctions that are harmful and retard uniformity of rules in a field where uniformity should be sought.

The judgment should be affirmed, with costs.

CRANE, J. (dissenting). Is the Uniform Sales Act, also referred to as the Sales of Goods Act, article 5 of the Personal Property Law (§ 144), applicable to the sales of corporate stock? Section 82 of the act provides that

a contract to sell " goods " is a contract whereby the seller agrees to transfer the property in " goods " to the buyer for a consideration called the price. A sale of " goods " is a contract whereby the seller transfers the property in " goods " to the buyer for a consideration called the price. Section 144, subdivision 1, provides that where, under a contract to sell or a sale, the property in " the goods " has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for " the goods " according to the terms of the contract of sale, the seller may maintain an action against him for the price of " the goods."

The act in section 156 has defined for us in very plain language what is meant by " goods." The definition is, " ' Goods ' include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale."

Certificates of corporate stock are choses in action. A separate article (Art. 6) of the Personal Property Law, known as the " Transfers of Shares of Stock Corporations," or the " Uniform Stock Transfer Act," deals with the transfer of these choses in action. Section 162 provides that the title to a certificate and to the shares represented thereby can be transferred only by delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby. The transfer may also be made by power of attorney. Section 171 reads as follows: "An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

The drafters of the Uniform Acts and the Legislature, which has embodied them into our Personal Property

Law, were careful that the words selected should exactly express their meaning. Strange indeed would it be if choses in action were turned into chattels by the mere use of the word " goods " and nothing more definite said about it. Turning to the Statute of Frauds, as we call it, section 85 of the Personal Property Law, we find the Legislature using the words " choses in action " when property of this nature was intended: "A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold," etc. Every rule of construction known to the law directs that the same word shall have the same meaning in the one enactment. This Personal Property Law deals with goods and chattels, also with stocks — choses in action — and when it intends to cover both goods and choses in action it says so.

That goods — tangible personal property — has, throughout the law and all the decisions, a separate and distinct identity from shares of stock or choses in action, is well illustrated in the struggle which the United States Supreme Court has had in getting rid of double taxation upon intangible property. In *First Nat. Bank* v. *Maine* (284 U. S. 312, 327, 328) it was said of stocks and bonds, " Both are intangibles and both generally have been recognized as resting in contract, or, technically, as ' choses in action,' " Again, " In which state, among two or more claiming the power to impose the tax, does the taxable event occur? In the case of tangible personalty, the solution is simple: the transfer, that is, the taxable event, occurs in that state where the property has an actual *situs*, and it is taxable there and not elsewhere. In the case of intangibles, the problem is not so readily solved, since intangibles ordinarily have no actual situs. But it must be solved unless gross discrimination between the two classes of property is to

be sanctioned; and this court has solved it in respect of the intangibles heretofore dealt with by applying the maxim *mobilia sequuntur personam.*" In a word, the court recognizes the distinction between tangible and intangible personal property, between goods and choses in action. Goods and chattels are taxed in the State where they exist or are, while shares of stock — choses in action — are taxed at the domicile of the owner. While we are not dealing with a tax case these recognized distinctions exist in the law from the nature of the property.

Therefore, I conclude that the Sales of Goods Act, referring as it does to goods and chattels, does not include shares of capital stock of a corporation. Not only do I find this distinctly stated in the statute itself, to which reference has been made, but the weight of authority, wherever this question has arisen, favors this interpretation.

In 1929 the Supreme Judicial Court of Massachusetts in *Goodhue* v. *State Street Trust Co.* (267 Mass. 28, 34), said, " A contract for sale or the sale of ' receipts ' or ' certificates ' is not governed by the uniform sales act."

In 1920 the Supreme Court of Errors of the State of Connecticut, in *Millard* v. *Green* (94 Conn. 597, at p. 609), in referring to the Uniform Sales Act, Uniform Negotiable Instruments Act, the Uniform Bills of Lading Act and the Uniform Stock Certificate Act, says, " None of these Acts, except the latter, so far as we can discover, either in terms or by necessary implication, include certificates of stock within their provisions."

And the Supreme Court of Wisconsin, in *Smith* v. *Lingelbach* (177 Wis. 170 [1922]), said: " The Uniform Sales Act does not include within its provisions certificates of stock (*Millard* v. *Green,* 94 Conn. 597). In addition to the fact that the Uniform Sales Act by its terms excluded certificates of stock, there is the additional consideration that in 1913, two years after the adoption

of the Uniform Sales Act, the legislature adopted the Uniform Stock Transfer Act, which by its terms relates specifically to the transfer of shares of stock in a corporation and would therefore seem to be exclusive of the Uniform Sales Act."

And the Supreme Court of Pennsylvania, in *Guppy* v. *Moltrup* (281 Penn. St. 343), in an action where the plaintiff sued to recover the purchase price because of the defendant's refusal to comply with his oral contract to purchase certain shares of corporate stock, took the same view, holding that shares of stock in a corporation are choses in action.

In *Davis Laundry & Cleaning Co.* v. *Whitmore* (92 Ohio St. 44) there is a *dictum* that shares of stock fall within the definition of goods. The case itself dealt with the Statute of Frauds. Mr. Williston, in his work on Sales (2d ed.), section 619, says that this *dictum* is not to be followed as it is incorrect and that the right conclusion was reached in *Millard* v. *Green* (94 Conn. 597).

There is also a decision by the intermediate court of Illinois, *Postel* v. *Hagist* (251 Ill. App. 454), stating that the provisions of the Sales Act are applicable to the sales of corporate stock.

In the case of *Corwin* v. *Grays Harbor Washingtonian, Inc.* (151 Wash. 585) the court held that where stock could not be readily resold, the exception in the Sales Act applied, and that an action for the price could be maintained.

On the other hand, we find the Federal courts following the main line of authorities. In *Henderson* v. *Plymouth Oil Co.* (13 Fed. Rep. [2d] 932, 937) it was held that the Uniform Sales Act does not apply to the sales of stock. The courts which have followed the plain meaning of these Uniform Acts embodied in our Personal Property Law have, in my judgment, correctly decided the question and preserved a distinction which necessarily exists in the very nature of the property.

The courts below were of the opinion that we had taken a different view in our decision in *Wills* v. *Investors Bankstocks Corp.* (257 N. Y. 451). That case related to the passing of title to stock and nothing else. The action was one in conversion on the claim that title to stock had passed to the plaintiff although there had been no delivery of the stock as required by article 6 of the Personal Property Law. Reference was made in the opinion to the Sales Act merely by way of analogy and illustration. The point, whether or not the Sales of Goods Act applied to shares of stock in a corporation where concededly title had not passed, was not before the court and was not decided. On the facts this court held that the action of conversion could not be maintained as title was not in the plaintiff.

Neither does *Pierpoint* v. *Hoyt* (260 N. Y. 26, 29) conflict in any way with our present holding. That was an action of willful conversion of certificates of stock, a refusal to deliver them up to the rightful owner. We said, " Wrongful acts affecting property rights in corporate stock can ordinarily be committed only through the medium of the certificates which evidence those rights. *For the purpose of redressing such wrongs,* the law must and does treat the symbol as though it were the thing symbolized. A conversion of a certificate of stock, whether indorsed or not, is, therefore, a conversion of the stock itself." In fact, the authorities for this proposition cited in our opinion long antedated the passage of the Uniform Sales Act into our Personal Property Law.

Now for the facts of this case. The defendant agreed to purchase 200 shares of the Firestone Tire and Rubber Company six per cent cumulative preferred stock, Series A, at the agreed price of $99 per share and accrued dividend. The stock was tendered to the defendant but he refused to accept it and this action was brought to recover the purchase price. The complaint was dis-

missed under the holding that action for the price could not be maintained as " property in the goods " had not passed to the buyer. Prior to this enactment (Personal Property Law, § 144) a tender of the property and a demand for the price were sufficient to maintain an action · therefor, (*Ackerman* v. *Rubens*, 167 N. Y. 405, 408; *Van Brocklen* v. *Smeallie*, 140 N. Y. 70, 75.) Since the enactment an action cannot be maintained for the price unless title in the goods has passed. I need not refer to the exceptions. The only question, therefore, presented upon the motion for judgment on the pleadings was the one asked at the beginning of this opinion: Are shares of corporate stock " goods " within the meaning of section 144 of the Personal Property Law? If they are, this complaint was properly dismissed. If they are not, the plaintiff may maintain an action for the purchase price. In accordance with what I have already stated, the Sales of Goods Act does not apply to shares of corporate stock, and this complaint was improperly dismissed.

POUND, Ch. J., O'BRIEN, HUBBS and CROUCH, JJ., concur with LEHMAN, J.; CRANE, J., dissents in opinion; KELLOGG, J., not sitting.

Judgment affirmed.