G. A. THOMPSON & CO., INC.,
Plaintiff,

v.

WENDELL J. MILLER MORTGAGE COMPANY, INC., and Wendell J. Miller, Defendants.

No. 75 Civ. 2024 (CHT).

United States District Court,
S. D. New York.

Oct. 12, 1978.

---

5. Rule 810 of the Rules of Bankruptcy Procedure.

6. *In re Fabric Tree, Inc.*, 558 F.2d 1069 (2d Cir. 1977).

Brown, Wood, Ivey, Mitchell & Petty, New York City, for plaintiff; Roger J. Hawke, Joseph G. Riemer, III, New York City, of counsel.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants; Ira Lee Sorkin, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

■ This is an action for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules"). Jurisdiction is based upon diversity of citizenship. The parties have stipulated that defendants are liable for breach of contract, and the sole question before this Court is what is the proper measure of damages recoverable by plaintiff for defendants' breach. For the reasons discussed below, the Court finds that plaintiff is entitled to recover the difference between the contract price and the cost of "covering" the breached contract, plus incidental and consequential damages.

### I.

Plaintiff G. A. Thompson & Co., Inc. ("Thompson") is a broker-dealer in, *inter alia*, conventional mortgages and GNMA securities.[1] Defendant Wendell J. Miller Mortgage Company, Inc. ("Miller Mortgage") is a mortgage banking company originating conventional mortgages and FHA/VA mortgages and selling, *inter alia*, conventional mortgages and GNMA securities. Defendant Wendell J. Miller ("Miller") was at all relevant times president of Miller Mortgage.

---

1. GNMA (commonly referred to as "Ginnie Mae") securities are generated by the Government National Mortgage Association, a wholly-owned corporate instrumentality of the United States under the aegis of the Department of Housing and Urban Development. Authorized by the National Housing Act, 12 U.S.C.A. § 1717(a)(2)(A) *et seq.* and 24 C.F.R. § 390.1, GNMA guarantees timely payment of the principal and interest on securities, backed by mortgage pools, which are insured by the Federal Housing Administration or guaranteed by the Veterans Administration.

The facts are not in dispute. On or about October 10, 1974, Miller and Miller Mortgage contracted to sell $1,000,000 principal amount (more or less) of 9% GNMA securities to Thompson. Delivery was to be made between March 18 and March 31, 1975 at the price of 96¾% of par value. The total contract price was $984,570.58.

Prior to the earliest expected date of delivery, Thompson contracted to sell an equal principal amount of 9% GNMA securities to Huntoon Page & Co., Inc. ("Huntoon") for delivery on or before March 31, 1975. On March 18, 1975, Miller and Miller Mortgage informed Thompson that it would not deliver the GNMA securities, thus breaching its contract. In order to fulfill its obligations to Huntoon, Thompson purchased on March 26, 1975 substitute securities from Bache & Co. Inc. ("Bache") at the prevailing market price of 102¼% of par value with delivery to be made by Bache on April 10, 1975. The cost to Thompson of this "covering" transaction was $1,045,-629.22. Thompson redelivered the securities to Huntoon on the same day they were received from Bache, incurring interest costs of $2,289.69 for the ten-day delay in fulfilling its contract with Huntoon.

Thompson now seeks to recover from Miller and Miller Mortgage damages in the amount of $61,058.64 (the difference between the October 10 contract price and the March 26 cover price) plus $2,289.69 (the interest paid to Huntoon) as consequential damages. The existence and amount of consequential damages is undisputed. However, Miller and Miller Mortgage argue that the measure of Thompson's damages should be only what defendants denominate "actual damages"—the difference between the cost of cover and the price received for the securities upon sale to Huntoon—because prior to breach Thompson derived certain benefits from transactions whereby

it traded on its interest in the Miller securities.

Defendants point to the following: On October 11, 1974 Thompson sold to Equitable Savings and Loan Association for 97½% of par value its interest in the GNMA securities purchased from Miller and Miller Mortgage; on November 12, 1974 Thompson repurchased that interest for 101¼% of par value; on December 12, 1974 Thompson sold an interest in purchasing a GNMA security for 101¼% of par value to Regional Investment Company. Because Thompson profited from these transactions, Miller and Miller Mortgage seek license to disregard the contract price and urge that damages be limited to the difference between the last transactions (the price of the Bache cover less the price received from Huntoon). The Court finds no merit in defendants' argument. Whatever benefit accrued to Thompson as a result of the entirely acceptable trading of its interest in the securities before the breach is of no relevance to the measure of damages to which it is entitled because of the breach.

## II.

As GNMA securities are investment securities within the meaning of Article 8 of the Uniform Commercial Code, *First National Bank v. Jefferson Mortgage Co.*, 576 F.2d 479 (3d Cir. 1978); *Lehman Government Securities, Inc. v. Commercial Mortgage Co.*, 16 U.C.C.Reptr. 1117 (N.Y.Sup.Ct. 1975), the measure of plaintiff's damages must be assessed under the New York Code.[2] However, Article 8 contains no provision for a buyer's remedies against a seller for breach of a contract to purchase securities, and section 2–105(1) expressly excludes investment securities from the definition of "goods" for purposes of Article 2. Nevertheless, the courts, relying upon the Official Comment to section 2–105,[3]

---

**2.** In a contract action, absent explicit choice of law by the parties, the applicable law will be the local law of the state which has the most significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws §§ 186–188 (1969). There appears to be no dispute that New York law governs the instant action.

**3.** The Official Comment to § 2–105 states in relevant part:

"Investment securities" are expressly excluded from the coverage of this Article. It is not intended by this exclusion, however, to prevent the application of a particular section of this Article by analogy to securities (as was done with the Original Sales Act in

have held that a buyer's remedies for breach of contract as set forth in Article 2 will apply to security transactions by analogy. *See First National Bank v. Jefferson Mortgage Co., supra; Bache & Co., Inc. v. International Controls Corp.*, 339 F.Supp. 341 (S.D.N.Y.), *aff'd on opinion below*, 469 F.2d 696 (2d Cir. 1972).

Section 2–712 of the New York Uniform Commercial Code provides in pertinent part:

"Cover"; Buyer's Procurement of Substitute Goods

(1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(2) The buyer may recover from the seller as damages *the difference between the cost of cover and the contract price* together with any incidental or consequential damages . . ., but less expenses saved in consequence of the seller's breach.

(Emphasis added).

It is conceded that on March 26, 1975 Thompson purchased 9% GNMA securities from Bache at a price of $1,045,629.22, in order to effect a cover within the meaning of section 2–712. Accordingly, by the unambiguous provisions of that section, Thompson is entitled to recover the difference between that cost and the price of the breached contract, or $61,058.64, plus incidental and consequential damages.[4]

We do not find convincing Miller and Miller Mortgage's argument that to award Thompson more than the difference between the cost of cover and the price at which the substituted securities were sold would be to award plaintiff "a windfall profit at the expense of the defendant." In urging this theory, Miller and Miller Mortgage ignore the policy underlying the remedy provisions of the Code: to put the aggrieved party "in as good a position as if the other party had fully performed." N.Y. U.C.C. § 1–106. Had the contract been performed and the securities timely delivered, there would have been no question that Thompson was entitled to profits realized in the interim transactions; similarly, it would have been ludicrous to charge the seller with any losses which might have been sustained. The Court will not now award to the wrongdoer the benefit of risks undertaken by the aggrieved.

For the reasons set forth above, judgment is awarded to plaintiff in the amount of $63,348.33, plus interest thereon from March 31, 1975.

Submit judgment on notice.

---

*Agar v. Orda*, 264 N.Y. 248, 190 N.E. 479, 99 A.L.R. 269 (1934)) when the reason of that section makes such application sensible and the situation involved is not covered by the Article of this Act dealing specifically with such securities (Article 8).

**4.** In *First National Bank v. Jefferson Mortgage Co., supra*, the Third Circuit faced facts similar to those of the instant case. There, however, the plaintiff-purchaser did not cover the securities by independent purchases on the market. The district court awarded damages to the plaintiff based upon the market price of the securities after a commercially reasonable time. In reversing the judgment below as to the measure and amount of damages, the Third Circuit approved the applicability of the section 2–712 standard: "Had cover been effected, the problem of damages . . . would have been simplified, since as we shall see the cost of actual replacement of the securities within a commercially reasonable time after repudiation could have measured the market for the purpose of computing damages." 576 F.2d at 485.