05-2378-cv
Koehler v. Bank of Bermuda Ltd.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: February 29, 2008                    Decided: September 23, 2008)

Docket No. 05-2378-cv

_____

LEE N. KOEHLER,

Petitioner-Appellant,

v.

THE BANK OF BERMUDA LIMITED,

Respondent-Appellee.

_____

Before: CABRANES, POOLER, and KATZMANN, Circuit Judges.

_____

Lee N. Koehler appeals from two orders of the United States District Court for the

Southern District of New York (Charles S. Haight, Jr., Judge): a March 9, 2005 memorandum

opinion and order and an August 10, 2005 memorandum opinion and order, insofar as those

orders vacated an October 29, 1993 order for payment or delivery of property of the judgment

debtor, held that Koehler could not reach an accommodation with the judgment debtor and

continue to pursue his action against The Bank of Bermuda Limited ("BBL"), and denied

reconsideration of those issues.  We hold that the district court erred in ruling that the Maryland

settlement extinguished Koehler's action against BBL.  We certify to the New York State Court

1

of Appeals the question of whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York.

VACATED in part.  Question CERTIFIED to the New York State Court of Appeals.

_____

BRIAN G. WEST, Towson, MD (Paul F. Newhouse, on the brief) for Petitioner-Appellant,

DANIEL B. RAPPORT, Friedman Kaplan Seiler & Adelman LLP, New York, NY (Robert J. Lack, Vanessa Richards, on the brief) for Respondent-Appellee.

_____

POOLER, Circuit Judge:

Lee N. Koehler appeals from two orders of the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge), a March 9, 2005 memorandum opinion and order and an August 10, 2005 memorandum opinion and order, insofar as those orders vacated an October 29, 1993 order for payment or delivery of property of the judgment debtor, held that Koehler could not reach an accommodation with the judgment debtor and continue to pursue his action against The Bank of Bermuda Limited ("BBL"), and denied reconsideration of those issues.  The district court concluded that Koehler's July 2004 settlement agreement had extinguished his claims against BBL, and that in any event, the district court lacked in rem jurisdiction over stock certificates held in Bermuda.

We hold that the district court erred in concluding that the settlement agreement

2

extinguished Koehler's action against the bank. Whether the district court nevertheless correctly denied Koehler's petition for a writ of execution, on the ground that it lacked in rem jurisdiction, depends on whether a court in New York may, pursuant to N.Y. C.P.L.R. 5225(b) or N.Y. C.P.L.R. 5227, order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York. Because this question has not been directly addressed by the New York State Court of Appeals and is controlling in the disposition of Koehler's petition, we certify the question to the New York State Court of Appeals. We retain jurisdiction over the case and will decide the appeal after we have learned the views of the New York State Court of Appeals or that court declines certification.

## BACKGROUND

On June 4, 1993, the United States District Court for the District of Maryland awarded Koehler a $2,096,343 default judgment against A. David Dodwell.[1] Koehler registered the judgment in the United States District Court for the Southern District of New York on July 23, 1993, pursuant to 28 U.S.C. § 1963. Dodwell, a resident of Bermuda, owned stock in a Bermuda corporation, The Reefs Beach Club Limited ("The Reefs"). It is undisputed that the stock certificates representing Dodwell's shares in The Reefs were always located in Bermuda. On the understanding that BBL possessed the certificates, which Dodwell had initially pledged to BBL as collateral for a loan, Koehler began garnishment proceedings against BBL.

---

[1] Dodwell moved to vacate the judgment for lack of personal jurisdiction. The United States District Court for the District of Maryland held that service upon Dodwell had been ineffective, and vacated the judgment. The Fourth Circuit, however, reversed the District Court, Koehler v. Dodwell, 152 F.3d 304 (4th Cir. 1998), and Koehler's judgment against Dodwell was reinstated.

On July 26, 1993 and August 10, 1993, Koehler served, on a New York subsidiary of BBL, a writ of execution, under N.Y. C.P.L.R. 5232(a), and a restraining notice, which cited Fed. R. Civ. P. 69(a) and N.Y. C.P.L.R. 5222(b). On October 27, 1993, Koehler filed a "motion for payment or delivery of property of judgment debtor." In that petition, Koehler claimed that if the stock certificates no longer represented security for BBL's loan to Dodwell, then either they were capable of delivery by BBL under N.Y. C.P.L.R. 5225 or they represented a debt to Dodwell and their value should be paid by BBL to Koehler under N.Y. C.P.L.R. 5227. On October 29, 1993, the United States District Court for the Southern District of New York (Robert J. Ward, Judge) signed, ex parte, an order to show cause why BBL should not be ordered to deliver property or pay over a debt owed to Dodwell and an "order for payment or delivery of property of the judgment debtor," which required BBL to deliver to Koehler any stock certificates owned by Dodwell or to pay to Koehler any debt owed to Dodwell, up to the sum of $2,096,343.[2]

BBL then challenged the district court's personal jurisdiction over it, an issue that the parties proceeded to litigate for the next ten years. See, e.g., Koehler v. Bank of Bermuda, Ltd., No. M18-302, 1994 U.S. Dist. LEXIS 1540, 1994 WL 48825 (S.D.N.Y. Feb. 16, 1994); Koehler v. Bank of Bermuda, Ltd., No. M18-302 (CSH), 1995 U.S. Dist. LEXIS 18223, 1995 WL 728467 (S.D.N.Y. Dec. 8, 1995); Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863 (2d Cir. 1996); Koehler v. Bank of Bermuda, Ltd., No. M18-302, 1997 WL 370791 (S.D.N.Y. July 2, 1997); Koehler v. Bank of Bermuda, Ltd., No. M18-302, 2003 U.S. Dist. LEXIS 1946, 2003 WL 289640 (S.D.N.Y. Feb. 11, 2003). Magistrate Judge Michael H. Dolinger found that BBL,

_____

[2] It appears that Koehler did not inform the district court at this time that the certificates were located in Bermuda. See Koehler v. Bank of Bermuda, Ltd., 2005 U.S. Dist. LEXIS 16521, at *4, 2005 WL 1924746, at *2 (S.D.N.Y. Aug. 10, 2005).

4

"whether through deliberate decision or extreme indifference to its obligations, failed to comply over an extended period of time both with its discovery obligations and with specific rulings of [the district] court." Koehler, 2003 U.S. Dist. LEXIS 1946, at *20-21, 2003 WL 289640 at *7. Eventually, in October 2003, BBL consented to the personal jurisdiction of the Southern District of New York over it, as of the commencement of the proceeding ten years earlier.

In March 2004, the district court ordered BBL to file an affidavit concerning the present location, ownership, and disposition of the shares in The Reefs owned by Dodwell at the time Koehler commenced his action. Koehler v. Bank of Bermuda, Ltd., No. M18-302 (CSH), 2004 U.S. Dist. LEXIS 3772, at *64, 2004 WL 444101, at *21 (S.D.N.Y. Mar. 10, 2004). In April 2004, BBL informed Koehler and the court that it was no longer in possession of Dodwell's stock certificates. The obligations for which BBL had held the certificates as collateral had been satisfied in 1993 and BBL (ignoring Judge Ward's turnover order) had transferred the stock to a Bermudan company that existed for Dodwell's benefit in July 1994.

In the meantime, however, Koehler initiated garnishment proceedings against The Reefs and a British West Indies corporation, Windward Properties Limited ("Windward"), in which Dodwell owned stock, in the United States District Court for the District of Maryland. Koehler had also asserted separate claims against Dodwell and The Reefs in state court – the Circuit Court for Baltimore County, Maryland. In July 2004, in the course of the District of Maryland proceedings, Koehler entered into a settlement with Windward, Dodwell, and The Reefs. Koehler agreed to be paid $475,000, of which he asserts that $75,000 was to be credited to the default judgment, and $400,000 to his claims against The Reefs and Dodwell in the action pending in Maryland state court. In return, he agreed not to sue Dodwell for enforcement of the

5

default judgment. The parties signed the settlement agreement on July 12, 2004, followed by an addendum and a general release on July 13, 2004.

In March 2005, the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge), denied Koehler's petition for writ of execution and his request to amend the petition to include claims of negligence, fraudulent conveyance, fraudulent concealment, and negligent misrepresentation, and dismissed his proceedings with prejudice. Koehler v. Bank of Bermuda, Ltd., No. M18-302 (CSH), 2005 U.S. Dist. LEXIS 3760, 2005 WL 551115 (S.D.N.Y. March 9, 2005). The district court concluded "that the settlement between Koehler and Dodwell discharges any rights Koehler may have had to pursue claims against BBL," 2005 U.S. Dist. LEXIS 3760, at *20, 2005 WL 551115, at *7, and that in any event it had "no in rem jurisdiction over Dodwell's share certificates, which underlies Koehler's remaining claims against BBL," 2005 U.S. Dist. LEXIS 3760, at *21, 2005 WL 551115, at *7. The district court subsequently denied Koehler's motion for reconsideration. Koehler v. Bank of Bermuda, Ltd., No. M18-302 (CSH), 2005 U.S. Dist. LEXIS 16521, 2005 WL 1924746 (S.D.N.Y. Aug. 10, 2005). Koehler appeals both orders.

The orders under appeal effectively vacated the October 29, 1993 turnover order. Because an order requiring securities to be brought into New York from another state or country is treated as an injunction, In re Feit & Drexler, Inc., 760 F.2d 406, 412 (2d Cir. 1985), Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152, 154 (2d Cir. 1977), the orders under appeal are reviewable as "interlocutory orders . . . dissolving [an] injunction[]," 28 U.S.C. § 1292(a)(1).

We hold that the district court erred in ruling that the Maryland settlement extinguished

6

Koehler's action against BBL, and we certify the question of its in rem jurisdiction to the New York State Court of Appeals.

**DISCUSSION**

I. THE SETTLEMENT

On July 12, 2004, attorneys for Koehler, Dodwell, The Reefs, and Windward signed a settlement agreement. Koehler agreed to be paid $475,000. In return, he released the other parties to the agreement from claims and proceedings.

Paragraph 1.A of the Settlement Agreement specified that the "Releasors" are "Koehler and his heirs, personal representatives, and assigns," and that the "Releasees" are "Dodwell, Reefs, Windward, IRR[3], and their respective employees, directors, officers, representatives, agents, successors, subsidiaries, affiliates, and attorneys." The same paragraph provides that "'Releasees' shall not include the BOB Group . . . ." An addendum to the Settlement Agreement, signed the following day, makes it clear that "BOB" refers to the Bank of Bermuda Group, which "is defined to mean The Bank of Bermuda Limited, its officers, directors, attorneys, accountants, successors, assigns, affiliates, and/or amalgamation partners."

Paragraph 2 of the Settlement Agreement required Koehler as the Releasor to give "[r]elease of and from any and all claims, actions, proceedings, garnishments, of any nature whatsoever against Releasees, known or unknown, worldwide, from the beginning of time to the date of the release, and in the future to the extent such claims or proceedings arise out of events occurring prior to the date of this Settlement Agreement, to the full extent permitted by law, except however, that the release to Dodwell shall not in any way constitute a release of the

---

[3] Island Resorts Reservations Limited.

7

Default Judgment, nor is it intended in any way [to] impair or prejudice Koehler's claims against BoB in New York." Paragraph 2.A of the Settlement Agreement provided as follows. "Subject to # 5, Releasors covenant and agree: (i) to refrain from taking any action to collect, execute upon, or enforce all or any part of the Default Judgment against Dodwell or against any other person, entity, asset, or thing, with the exception that Releasor may pursue claims against BOB as discussed in paragraph 5 below, and (ii) hereafter not to record or re-record the Default Judgment in any judicial or governmental, public, or commercial record anywhere in the world, except as required to pursue the permitted actions against BoB."

Paragraph 5 of the Settlement Agreement provided that "[t]he Releasees acknowledge that there is currently pending in United States District Court for the Southern District of New York a garnishment proceeding between Koehler and BOB. Nothing in this Settlement Agreement shall be construed so as to prohibit or preclude or otherwise limit Koehler from continuing to prosecute such New York action against the BOB Group, or adding claims or causes of action or defenses against the BOB Group therein, except however that Koehler shall not seek, obtain, assume, acquire by assignment or operation of law or fact, or exercise any rights, claims or causes of action which BOB has or may have against any Releasee now or in the future." In Paragraph 5A, the releasees in turn released Koehler "from any existing or future claim arising out of an assertion by the BOB of a claim against them for indemnity or damages as the result of Koehler pursuing any claim against BOB."

Under the express language of the settlement agreement, paragraph 10, Maryland law is controlling. In Maryland, "[r]eleases are contracts. Therefore, they are construed and applied according to the rules of contract law. Moreover, it is well settled that [a] release is to be

8

construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation." Owens-Illinois, Inc. v. Cook, 872 A.2d 969, 985 (Md. 2005) (internal quotation marks and citations omitted); see also Shriver v. Carlin & Fulton Co., 141 A. 434, 440 (Md. 1928). Furthermore, "[t]he parties to a release, absent legislative restriction, ordinarily are free to expand or contract the scope of the instrument in accordance with their agreement." Morgan v. Cohen, 523 A.2d 1003, 1009 (Md. 1987) (holding that release of original tortfeasor does not, of itself, produce legal result of releasing claims against subsequent negligently treating physician, and that any Maryland decisions to the contrary are overruled).

We agree with the district court that "the intent of the parties clearly appears from the face of the agreement. . . . Koehler [made] a covenant not to sue Dodwell to enforce the Default Judgment against him, while keeping the judgment itself intact." Koehler, 2005 U.S. Dist. LEXIS 3760, at *9, WL 551115, at *3. We also agree that "[o]rdinarily, a settlement between judgment creditor and judgment debtor eliminates the right of the judgment creditor to pursue claims against a judgment debtor's garnishee . . . because the settlement removes the underlying debt upon which the judgment creditor's claim against the garnishee is based." Id. (emphasis added). See Baltimore & Ohio R.R. Co. v. Equitable Bank, N.A., 550 A.2d 407, 411-12 (Md. Ct. Spec. App. 1988). We disagree with the district court in that we conclude that Koehler was able to, and did, reserve his rights against the garnishee.

The settlement agreement, at paragraph 2, expressly left the District of Maryland default judgment against Dodwell intact, as the district court found. Moreover, the language of the agreement makes it plain that Koehler intended to reserve his rights to sue BBL. The settlement

9

agreement provided that the release would "not . . . in any way impair or prejudice" Koehler's claims against BBL in the Southern District of New York and that it shall not be construed "so as to prohibit or preclude or otherwise limit Koehler from continuing to prosecute" the action against BBL. In fact, under the General Release signed on July 13, 2004, the settlement and release expressly allow for the possibility that BBL will pursue a claim against Dodwell, arising from Koehler's action against BBL. Finally, Dodwell expressly acknowledged his possible future risk of liability to BBL for indemnity or damages as the result of Koehler's pursuing a claim against BBL.

Accordingly, it is clear that the intent of the parties was that Koehler would no longer sue Dodwell directly to enforce the judgment against him but would continue litigation against BBL. BBL argues that, because of its status as a garnishee rather than a surety, the settlement agreement does not fit comfortably within the ambit of Maryland's "reservation of rights" doctrine. See Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co., 707 A.2d 913, 921 (Md. Ct. Spec. App. 1998); see also Federal Land Bank, Inc. v. Esham, 406 A.2d 928, 940 (Md. Ct. Spec. App. 1979). We disagree.

While Chicago Title is specifically concerned with reservation of rights against a surety, it does not hold that reservation of rights is limited to sureties. Indeed, Chicago Title extends to sureties a general principle previously applicable to judgment debtors, namely that "[a] right against other debtors is held to be reserved in any case where it appears from the terms of the release that it was not intended or expected that all the debtors should be released." Chicago Title, 707 A.2d at 920-21 (quoting Roe v. Citizens National Bank, 358 A.2d 267, 270 (Md. Ct. Spec. App. 1976), in turn quoting Williston on Contracts § 338). The Chicago Title court traced

10

this principle to <u>Shriver v. Carlin & Fulton Co.</u>, 141 A. 434, 440 (Md. 1928) (stating that "a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation. Hence the legal operation of a release of one of two or more joint debtors may be restrained by an express provision in the instrument that it shall not operate as to the other.").

BBL points to no Maryland case standing for the proposition that a judgment creditor may not settle with a judgment debtor while reserving rights against a named garnishee. And there is no reason to suppose that the general principle that a creditor may reserve his rights against one party while releasing another, which has been applied to multiple judgment debtors, <u>see Shriver</u>, 141 A. at 440, sureties, <u>see Chicago Title</u>, 707 A.2d at 920-21, and successive tortfeasors, <u>see Morgan</u>, 523 A.2d at 1009, is inapplicable to garnishees.

The district court ruling, as it stands, makes a release encompass, by operation of law, parties specifically excluded by the release. That is not the law in Maryland. We conclude that the district court erred in ruling that the Maryland settlement extinguished Koehler's action against BBL.

Koehler's motion to certify questions of local law to the Maryland Court of Appeals is denied as moot.

## II. IN REM JURISDICTION

### A. Authority under New York Civil Practice Law and Rules

Under Federal Rule of Civil Procedure 69(a), a district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the district court sits. In New York, that law is the New York Civil Practice Law and Rules. Section 5225

authorizes a court to order the delivery of property that belongs to a judgment debtor but is not in his possession. N.Y. C.P.L.R. 5225(b). A similar proceeding is available when a debt is sought from a person who is or will be indebted to the judgment debtor. N.Y. C.P.L.R. 5227. Koehler invoked both provisions in his October 1993 petition. We assume, without deciding at this juncture, that the stock Koehler sought was property of Dodwell that would be subject to judgment enforcement, under N.Y. C.P.L.R. 5201, were it located within New York.[4]

In vacating the 1993 turnover order, the district court relied on what it perceived to be the well-established principle that it could not attach property that is not within its jurisdiction. 2005 U.S. Dist. LEXIS 3760, at *32, 2005 WL 551115, at *11. The cases it cites are Fiduciary Partners, Inc. v. Philippine Export & Foreign Loan Guaranty Corp., 921 F. Supp. 1113, 1119-21 (S.D.N.Y. 1996) (stating that property sought to be levied against by writ of execution under N.Y. C.P.L.R. 5232 must exist within the court's jurisdiction); National Union Fire Ins. Co. v. Advanced Employment Concepts, Inc., 703 N.Y.S.2d 3, 4 (N.Y. App. Div. 1st Dep't 2000) (holding that, "[i]n order to be subject to attachment, property must be within the court's jurisdiction"); Intercontinental Credit Corp. v. Roth, 578 N.Y.S.2d 955, 956 (N.Y. Sup. Ct. 1990) (noting that "a New York court cannot attach property not within its jurisdiction"), vacated on other grounds, 595 N.Y.S.2d 602 (N.Y. Sup. Ct. 1991); and Gavilanes v. Matavosian, 475

_____

[4] The district court held that the Bermuda stock certificates sought by Koehler were not leviable in New York, as property against which a money judgment may be enforced, under N.Y. C.P.L.R. § 5201(b). 2005 U.S. Dist. LEXIS 3760, at *21-28, 2005 WL 551115, at *8-10. And the district court held that the stock certificates did not fit within the N.Y. C.P.L.R. § 5201(a) definition of debts against which a money judgment may be enforced. 2005 U.S. Dist. LEXIS 3760, at *28-31, 2005 WL 551115, at *10-11. But the district court did not hold that the stock certificates failed to fit within the N.Y. C.P.L.R. § 5201(b) definition of property against which a money judgment may be enforced.

12

N.Y.S.2d 987, 989 (N.Y. Civ. Ct. 1984) (stating that "[i]t is well established that a New York court cannot attach property not within its jurisdiction"). See also Mones v. Commer. Bank of Kuwait, S.A.K., 399 F. Supp. 2d 310, 317 (S.D.N.Y. 2005) (stating that "[c]ourts have repeatedly held . . . that [N.Y. C.P.L.R. 5225] power is limited to ordering the delivery of property that is located within the court's jurisdiction."), vacated on other grounds, 204 Fed. Appx. 988 (2d Cir. 2006).

It seems clear that a court sitting in New York, that has personal jurisdiction over a judgment debtor, may order the judgment debtor himself to deliver property into New York. See, e.g., Gryphon Domestic VI, LLC v. APP Int'l. Fin. Co., B.V., 836 N.Y.S.2d 4, 9 (N.Y. App. Div. 1st Dep't 2007) (holding that a court in New York can order a judgment debtor, over whom it has personal jurisdiction, to turn over out-of-state assets, under N.Y. C.P.L.R. 5225(a)); Starbare II Partners, L.P. v. Sloan, 629 N.Y.S.2d 23 (N.Y. App. Div. 1st Dep't 1995) (holding that a court in New York was entitled to order a judgment debtor to deliver artwork in his possession, under N.Y. C.P.L.R. 5225, although the artwork was located outside new York, because it had personal jurisdiction over him). It is less clear that courts have the authority to order a person or entity other than the judgment debtor to deliver assets into New York, when that person or entity is located in a foreign jurisdiction.

The relevant inquiry is whether Judge Ward had the authority to require a bank in Bermuda to turn over Dodwell's assets. Arguably, "there is no precedent indicating that the court has this authority over a financial intermediary." Mones, 399 F. Supp. 2d at 318. However, BBL has consented to the district court's personal jurisdiction over it, and it is possible to read New York case law as providing that a court may order any entity over which it has

13

personal jurisdiction to turn over out-of-state property, regardless of whether that entity is the judgment debtor. See Gryphon Domestic VI, 836 N.Y.S.2d at 9 (noting that "the explicit rationale [in Starbare II Partners, 629 N.Y.S.2d at 23] was that the court could order the defendant judgment debtor to turn over property because it had personal jurisdiction over the defendant"); Morgenthau v. Avion Resources Ltd., 849 N.Y.S.2d 223, 226 (N.Y. App. Div. 1st Dep't 2007) (endorsing plaintiff's position that "the New York courts have the power to command a garnishee present in the state to bring out-of-state assets under the garnishee's control into the state").

If the personal jurisdiction that a court has over a judgment debtor is the key to its ability to force him to facilitate judgment enforcement by bringing his own property into New York, then we see no principled reason why a court in New York should not be able to order a garnishee that has submitted to its personal jurisdiction to deliver property within its control. Although a writ of execution, which is issuable to a New York sheriff, cannot be levied outside New York, we perceive nothing in the text of N.Y. C.P.L.R. 5225 that would limit the power of a court to order a party within its personal jurisdiction to deliver property to New York. However, we acknowledge that the issue is unsettled in New York, and that it must be resolved by the New York State Court of Appeals, before we can determine whether the district court correctly vacated the turnover order.

We are also mindful that, even if "[s]hares of stock are intangible property . . . yet for practical purposes they are merged in stock certificates." Agar v. Orda, 190 N.E. 479, 480 (N.Y. 1934). See Thyroff v. Nationwide Mut. Ins. Co., 864 N.E.2d 1272, 1276 (N.Y. 2007); Eberhard v. Marcu, 530 F.3d 122, 136 n.14 (2d Cir. 2008). The district court concluded that stock

14

certificates in general must be located within the state in order to be attached, citing ABKCO Indus., Inc. v. Apple Films, Inc., 350 N.E.2d 899, 901 (N.Y. 1976) (stating in dicta that "some intangibles are deemed to have become embodied in formal paper writings . . . and in such instances attachment depends on the physical presence of the written instrument within the attaching jurisdiction.") and Dyer v. Dyer, 247 N.Y.S. 540, 541-42 (N.Y. App. Div. 1st Dep't 1931) (noting that "[s]hares owned by a non-resident defendant in a foreign corporation are not property within the State of New York, even though the corporation [is] doing business here, unless the stock certificates themselves are found within the State."). 2005 U.S. Dist. LEXIS 3760, at *27, 2005 WL 551115, at *9. We note that such propositions appear at first sight to be inconsistent with recent developments in which at least one New York court has ordered the turnover, under N.Y. C.P.L.R. 5225, of extraterritorial stock certificates. See Gryphon Domestic VI, 41 A.D.3d 25, 836 N.Y.S.2d 4.

These unresolved issues regarding the reach of courts in New York over extraterritorial assets lie at the intersection of New York State civil practice and New York State policy. It is our understanding that the highest court in New York has yet to resolve them. Moreover, these issues appear to be dispositive of the district court's conclusion that the stock certificates Koehler is seeking, which have always been located in Bermuda, are not subject to judgment enforcement in New York. 2005 U.S. Dist. LEXIS 3760, at *21-31, 2005 WL 551115, at *7-11.

We therefore certify to the New York State Court of Appeals the question whether a court sitting in New York may, pursuant to N.Y. C.P.L.R. 5225(b), order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock

15

certificates are located outside New York. The New York State Court of Appeals may, of course, reformulate or expand this question as it wishes.

B. Authority under Federal Rules of Civil Procedure

As an alternative, Koehler sought from the district court attachment of the stock certificates "by means of the equitable powers of [the district court] found in the 'unless the court directs otherwise' clause of Rule 69(a)." Koehler, 2005 U.S. Dist. LEXIS 3760, at * 40, 2005 WL 551115, at *13. "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1) (emphasis added).

The district court denied such equitable relief, and Koehler does not raise the "unless the court directs otherwise" argument to this Court. We consider this alternative argument waived. Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998).

Finally, Koehler argues that "Judge Ward had authority to issue the Turnover order pursuant to the inherent equitable powers of federal courts to enforce money judgments via the remedy known as creditor's bills." A creditor's bill was used at common law "to permit a judgment creditor to discover the debtor's assets, to reach equitable interests not subject to execution at law, and to set aside fraudulent conveyances." Grupo Mexicano De Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 319 (1999) (citations omitted). Since Koehler does not assert that he invoked the mechanism of the creditor's bill in his petitions to the district court seeking enforcement of the default judgment, we have no occasion to decide whether such a

16

remedy was available.

We have considered Koehler's other arguments and find them unavailing.

**CONCLUSION**

For the foregoing reasons, we VACATE that part of the district court's March 9, 2005 opinion and order that ruled that the settlement between Koehler and Dodwell discharged any rights Koehler may have had to pursue claims against BBL, and we CERTIFY the following determinative issue of state law to the New York State Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York State Court of Appeals Rules of Practice § 500.27 (22 N.Y.C.R.R. § 500.27): whether a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York.

We also hereby ORDER that the Clerk of the Court transmit to the Clerk of the New York State Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York State Court of Appeals or that court declines certification. Finally, we order the parties to bear equally any fees and costs that may be requested by the New York State Court of Appeals.

**CERTIFICATION**

The following question is hereby certified to the New York State Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and 22 N.Y.C.R.R. § 500.27, as ordered by the

17

United States Court of Appeals for the Second Circuit.  May a court sitting in New York order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor (or cash equal to their value) to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York?