■ ALFRED LaROSA et al., Respondents, v AVIGAIL ARBUSMAN et al., Appellants, et al., Defendants. [903 NYS2d 371]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered March 16, 2009, that granted plaintiffs' motion for partial summary judgment on the twelfth cause of action alleging conversion, unanimously affirmed, with costs.

Plaintiffs' decedent, Thomas Elmezzi, a retired businessman, who was 90 years of age at the time of these events, decided to invest in a jewelry business. He entered into an agreement with defendant-appellant, Avigail Arbusman, an experienced jewelry retailer who owned defendant-appellant Jewels by Viggi, Ltd. with her husband, defendant-appellant, Dan Arbusman. Elmezzi and Avigail executed a memorandum of understanding (MOU) to set forth their understanding concerning the formation and governance of Vito, Ltd. The MOU explicitly states (1) that its purpose was "to set forth the understandings of the parties in

order to form and provide for the governance of a corporation formed by the parties"; (2) that the matters it contained "shall be construed as a binding commitment to effectuate the terms of this Memorandum"; and (3) that both parties shall have an equal share in the corporation. The MOU obligated each party to contribute "an equal amount of capital" to Vito, Ltd. However, it is undisputed that while Elmezzi contributed $750,000 in capital, defendants did not invest any funds in Vito, Ltd. The MOU further provides that the parties intended "to negotiate in good faith [*sic*] draft and execute more detailed documents dealing with the matters contained herein and any related items including a Shareholder Agreement, Buy Sell Agreement, and Corporate Bylaws ("Bylaws"), and any other documents necessary to effectuate the purposes of this Memorandum."

On May 26, 2005, Avigail, Dan and Elmezzi executed a 17-page stockholders' agreement. The stockholders' agreement authorized the corporation to issue 200 shares of common stock, but noted that the corporation had already issued 50 shares, of which Avigail held 25 shares and Elmezzi held 25 shares. The stockholders' agreement further provided that in the event of death or permanent disability of either shareholder, "the shares of the Deceased or Disabled Shareholder shall pass free and clear to the Surviving Shareholder who shall remain the sole shareholder of the Corporation."

The stockholders' agreement also contains a merger clause and an arbitration clause. Paragraph 17, the merger clause, states: "This Agreement contains the entire understanding between the Parties concerning the subject matter contained herein. There are no representations, agreements, arrangements or understandings, oral or written, between or among the Parties, relating to the subject matter of this Agreement, which are not fully expressed herein."

Paragraph 9, the arbitration clause, states, in pertinent part: "Any controversy arising out of this Agreement or its breach shall be settled by arbitration if, prior to the commencement of any legal proceedings dealing with a controversy arising out of this Agreement or its breach, any Party to this Agreement demands that such controversy be arbitrated."

Approximately seven months after Vito, Ltd. incorporated, Elmezzi died. Avigail took control of Vito, Ltd. and removed funds from the corporation. Plaintiffs maintain that Avigail's actions constitute conversion because at the time of Elmezzi's death, Avigail had no rights as a shareholder, as she had never made the capital contribution the MOU or Business Corpora-

tion Law § 504 (a) required. Defendants-appellants contend that Avigail was entitled to the funds because she became the owner of the decedent's shares in Vito, Ltd., upon his death, pursuant to the terms of the stockholders' agreement, that, they claim, superseded the MOU.

The stockholders' agreement, that Avigail and Elmezzi specifically contemplated in the MOU and that Avigail, Dan and Elmezzi executed after the MOU, does not refer to or mention capital contributions by shareholders or otherwise refer to the amount the parties were to pay for shares of Vito, Ltd. Instead, the stockholders' agreement treats the shares as having already been issued. Thus, the stockholders' agreement does not alter, amend, revoke or supersede the MOU's provision concerning capital contributions. Although the stockholders' agreement specifically provides that it supersedes prior agreements concerning the "subject matter contained herein," because the stockholders' agreement does not address the subject of capital contributions, the MOU's treatment of capital contributions did not merge into the stockholders' agreement.

Because the MOU is clear and unambiguous, the motion court properly declined to consider parol evidence to ascertain its meaning and the parties' intentions (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). Moreover, merely because the parties acknowledged in the MOU that they intended to negotiate, in more detail than the two-page MOU provided, how to govern Vito, Ltd., this does not render the MOU incomplete or abrogate the requirement in the MOU that each shareholder will provide an equal amount of capital.

To obtain shareholder rights, a shareholder must provide some kind of consideration (*see Matter of Heisler v Gingras*, 90 NY2d 682 [1997]). Because Avigail made no capital contribution to Vito, Ltd., in consideration for shares of stock, she never attained shareholder status (*see Matter of KSI Rockville v Eichengrun*, 305 AD2d 681 [2003]; *Josephthal Holdings v Weisman*, 5 AD3d 221 [2004]). Avigail's claim that she secured her shares in the corporation through "sweat equity" is without merit. Although Business Corporation Law § 504 (a) provides that consideration for issue of shares can be in the form of "labor or services actually received by or performed for the corporation" or "a binding obligation to perform services having an agreed value," defendants-appellants have failed to offer any evidence to show that Avigail performed any services for the corporation during its formation or prior to its incorporation, or that there was a "binding obligation" by Avigail to provide services, having an agreed value, to the corporation in lieu of capital for

shares. The only service that Avigail provided during the seven months that Vito, Ltd. was in existence was allegedly to have business cards made. Vito, Ltd. made no sales and did no business during those months. Avigail admittedly "put the business on hold" during the summer of 2005. Thus, we cannot conclude that Avigail provided services of equal value to the decedent's $750,000 capital contribution to Vito, Ltd.

The arguments defendants-appellants raise for the first time on appeal asking this Court to search the record and grant summary judgment in their favor dismissing the conversion claim, are without merit. Defendants-appellants waived their right to arbitrate as provided in paragraph 9 of the stockholders' agreement by continuing to litigate after failing to appeal the court's denial of their motion to compel arbitration in 2007, by failing to assert an affirmative defense relating to arbitration in their answer and by extensively engaging in this litigation for years (*see Ryan v Kellogg Partners Inst. Servs.*, 58 AD3d 481 [2009]). Moreover, because plaintiffs are seeking to recover the value of their decedent's personal interest in Vito, Ltd. at his death, that the shares of stock decedent held represent, they have demonstrated a claim for conversion (*see Agar v Orda*, 264 NY 248, 251 [1934]; *Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 290 [2007]). Concur—Tom, J.P., Moskowitz, Renwick, DeGrasse and Manzanet-Daniels, JJ.

Motion to strike portions of reply brief and cross motion seeking costs denied.