[849 NYS2d 223]

ROBERT M. MORGENTHAU, as District Attorney of New York County, Appellant, v AVION RESOURCES LTD. et al., Respondents.

First Department, December 28, 2007

**APPEARANCES OF COUNSEL**

*Robert M. Morgenthau, District Attorney*, New York City (*Michael S. Morgan* and *Mark Dwyer* of counsel), for appellant.

*Howrey LLP*, New York City (*James G. McCarney* and *Grace L. Chan* of counsel), for Avion Resources Ltd. and others, respondents.

*Bernard D'Orazio, P.C.*, New York City (*Bernard D'Orazio* of counsel), for Harber Corp. and others, respondents.

*Gleason & Kaotz, LLP*, New York City (*John P. Gleason* of counsel), for Farswiss Asset Management Ltd., respondent.

*Busson & Sikorski*, New York City (*Robert S. Sikorski* and *Berenice Busson* of counsel), for Chettiar Business, Inc. and others, respondents.

OPINION OF THE COURT

FRIEDMAN, J.P.

In 2002, the United States seized millions of dollars from defendants' accounts at a New York County bank (then known as Merchant's Bank, subsequently renamed Valley National Bank) and transferred the funds out of state in connection with a prosecution in the District of New Jersey. Although there was no federal indictment of any of these defendants (each an individual of Brazilian nationality or an off-shore corporate entity), the Government held defendants' money in anticipation of showing that the one person who was indicted—Carolina Nolasco, a bank employee who pleaded guilty to using defendants' accounts to operate an illegal money transmittal business— possessed some forfeitable interest in the bank accounts. Four years after the money was seized, and more than a year and a half after Nolasco's guilty plea, the federal court issued an opinion and an order, each dated June 6, 2006, and entered June 7, 2006, granting defendants summary judgment on their petitions to recover their money.[1]

When the federal court handed down its ruling that defendants were entitled to the return of their money, the United States Attorney, instead of appealing or returning the funds to defendants, asked plaintiff, the New York County District Attorney, if his office had any interest in commencing proceedings relating to the funds. About two weeks later, on June 20, 2006, plaintiff obtained from Supreme Court, New York County, an ex parte order of attachment pursuant to CPLR 1317 (the June attachment order), purporting to attach all funds of defendants

---

1. In rejecting the Government's contention that it should be permitted to conduct further discovery in pursuit of evidence that Nolasco held a forfeitable interest in the funds, the federal court stated: "[T]he Government asks this Court to continue to take on faith that it may, somehow, one day, demonstrate a right to this property. After four years, it is neither legal nor just to do so." The federal court further noted: "[The Government's submission] suggests . . . that the Government seeks to transform this criminal forfeiture proceeding into a tool for investigation of Brazilian crime and international financial wrongdoing. Were this Court to comply, it would far exceed the bounds of the role assigned to it by the criminal forfeiture statutes."

constituting the proceeds or instrumentalities of their alleged operation of illegal money transmittal businesses in violation of the Banking Law, in aid of plaintiff's soon-to-be-commenced action seeking civil forfeiture of such funds under CPLR article 13-A.[2]

At the time the June attachment order was issued, the funds it sought to attach were not in a New York bank; as previously stated, the federal government, upon seizing defendants' accounts at the New York bank in 2002, transferred the money to an out-of-state bank. Supreme Court granted the June attachment order based upon an affirmation by an assistant district attorney representing that the money sought to be forfeited "is currently held by the United States government by and through its agent located in New York County, counsel for the Customs and Border Patrol Service, a governmental sub-division of the Department of Homeland Security, Immigration and Customs Enforcement." Pursuant to the June attachment order's authorization of levy upon any garnishee "having possession or custody of property in which any of the defendants has an ownership interest," plaintiff served the order upon the Customs and Border Patrol Service on June 20, 2006. Thereafter, the federal government transferred approximately $17,744,000—monies belonging to defendants that had already been withheld from them since 2002—to a New York County bank account under plaintiff's control.

The June attachment order was ultimately vacated by Supreme Court on the ground that plaintiff failed to serve his motion to confirm the order within five days after the levy, as required by CPLR 1317 (2).[3] Before the vacatur of the June attachment order, however, plaintiff obtained a second ex parte order of attachment, dated August 2, 2006 (the August attachment order). Although plaintiff served the motion to confirm the August attachment order within the required five-day period, Supreme Court subsequently vacated that order as well. The August attachment order was vacated on the ground that the attached funds had been brought back into New York as the

---

2. Plaintiff subsequently filed his civil forfeiture complaint on June 29, 2006. In August 2006, a New York County grand jury returned an indictment charging each defendant with operating an unlawful money transmittal business in violation of Banking Law § 650 (2) (b) (1). The indictment is not at issue on this appeal.

3. We agree with Supreme Court that CPLR 1317 (2) required plaintiff to serve the motion to confirm the ex parte order of attachment within five days after levy.

result of the issuance of the June attachment order, which, the court believed, it had lacked jurisdiction to issue because the funds were at that time deposited in a bank outside of New York. On plaintiff's appeal, we affirm.

Plaintiff concedes that he could not levy directly upon the out-of-state bank accounts in which the federal government held the funds at issue when the June attachment order was signed, because those bank accounts, being outside New York, were beyond the jurisdiction of the New York courts (*see Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101 [2000]). Accordingly, plaintiff presents two alternative arguments to support the validity of the federal government's transfer of the funds to him in New York.

First, plaintiff points out that his office did not levy directly upon the out-of-state banks where the money was held, but instead levied upon a New York garnishee that controlled those bank accounts, namely, the New York County office of the Customs and Border Patrol Service of the United States Department of Homeland Security (Homeland Security). In support of this contention, plaintiff correctly notes that the New York courts have the power to command a garnishee present in the state to bring out-of-state assets under the garnishee's control into the state (*see Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25, 31 [2007]; *Miller v Doniger*, 28 AD3d 405 [2006]; *Starbare II Partners v Sloan*, 216 AD2d 238, 239 [1995]).

Secondly, plaintiff makes the alternative argument that no levy was executed pursuant to the June attachment order because, "in reality, the federal government . . . voluntarily agree[d] to transfer [defendants'] monies to [plaintiff]." Plaintiff elaborates in his reply brief:

> "After all, under general supremacy principles, federal law enforcement agencies are not bound to honor state court orders demanding the delivery of property within their custody. Thus, absent an agreement to do so, the federal authorities in this case would have had no obligation to honor Supreme Court's June 20th attachment. . . . [I]t is clear that the federal authorities' decision to transfer defendants' monies to [plaintiff] was indeed a voluntary one, as it derived from the United States Attorney's equally voluntary decision to forgo further proceedings [in New Jersey federal court] in view of 'the

decision of the New York County District Attorney's Office to pursue a prosecution' of defendants." (Record citation omitted.)[4]

 Notwithstanding the United States Attorney's statement to the federal court that Homeland Security was "obligated" to comply with the June attachment order (*see* footnote 4 hereof), we are persuaded by plaintiff's supremacy argument that Homeland Security's transfer of the funds to his control was voluntary. The conclusion we draw from this, however, is that, under the circumstances that existed at the time, the transfer was executed: (1) without valid judicial sanction by Supreme Court; (2) in contravention (even if inadvertent, as we assume it was) of the order of the New Jersey federal court ruling that defendants were entitled to the return of their money; and (3) so far as plaintiff has shown, without statutory authorization. Accordingly, we hold that Supreme Court properly declined to afford the June 2006 transfer retroactive validation on the basis of the subsequent August attachment order.

Plaintiff concedes both (1) that he could not (and did not) levy directly upon the out-of-state bank accounts in which the funds were held when the June attachment order was issued, and (2) that Homeland Security, even though present in New York County, could not be compelled, as garnishee, to transfer the funds pursuant to a state court order. It therefore follows that the transfer of the funds was an entirely voluntary transaction between two law enforcement agencies. The problem is that this transfer was extrajudicial, since, to reiterate, Supreme Court had no power to compel the supposed garnishee to turn over the funds. Moreover, at the time the transfer occurred, the New Jersey federal court had already issued an *order* granting defendants summary judgment determining that they were

---

4. The quotation within the excerpt from plaintiff's brief is from a letter, dated June 21, 2006, that the United States Attorney for the District of New Jersey sent to United States District Judge Joseph A. Greenaway, Jr., the day after the June attachment order was served on Homeland Security. The letter stated, among other things:

"The [District] Court having by its June 7, 2006 Order [granting defendants summary judgment on their petitions to recover their money] relinquished federal jurisdiction over the property, it is the view of the undersigned that the entity that has custody of the funds, the U.S. Department of Homeland Security, Customs and Border Protection, is obligated to comply with the state court order by turning over those funds."

Again, plaintiff now argues that Homeland Security was not obligated to comply with the June attachment order.

entitled to the return of the funds.[5] By arranging the voluntary transfer of the funds from Homeland Security to plaintiff immediately after the New Jersey federal court ruled that the federal forfeiture order was invalid as to defendants and that they were entitled to the return of the funds, the United States Attorney and plaintiff appear to have circumvented the New Jersey federal court's determination of a matter within its jurisdiction. Although there is neither reason to doubt that the circumvention was inadvertent, nor any reason to question the good faith of the prosecutors involved, this manner of proceeding nonetheless strikes us as flawed in both form and substance.

It might be argued that a transfer of seized property from the federal government to a state law enforcement agency, even if not sanctioned in advance by competent judicial authority, would be valid if authorized by a federal statute, assuming the state agency sought judicial confirmation promptly thereafter to comply with the requirements of due process. Unfortunately, plaintiff does not identify any provision of federal law that authorized the fund transfer at issue here.

Plaintiff's citation of 19 USC § 1616a (b) (1)—which, in any event, he has not specifically argued to have been applicable—does not assist him; indeed, it only highlights the lack of authorization for the transfer in question. In pertinent part, 19 USC § 1616a ("Disposition of forfeited property") provides:

"(a) State proceedings . . .

"If a complaint for forfeiture is filed under this chapter, the Attorney General may seek dismissal of the complaint in favor of forfeiture under State law.

"(b) Transfer of seized property; notice

"If forfeiture proceedings are discontinued or dismissed under this section—

"(1) the United States may transfer the seized property to the appropriate State or local official; and

---

**5.** The federal court's opinion, dated June 6, 2006, and entered June 7, 2006, stated: "Petitioners [defendants herein] have proven, by a preponderance of the evidence, that their right, title or interest in the forfeited property is superior to that of Nolasco. Pursuant to 21 U.S.C. § 853 (n) (6) (A), *this determination renders the Order of Forfeiture invalid as to every Petitioner named herein*" (emphasis added). The order amending preliminary order of forfeiture, of the same date, decreed that it was "ORDERED that Petitioners' motions for summary judgment . . . are GRANTED." An amended order amending preliminary order of forfeiture, dated June 7, 2006, and entered June 8, 2006, was identical in pertinent part.

"(2) notice of the discontinuance or dismissal shall be provided to all known interested parties."[6]

The forfeiture proceedings against defendants' funds, however, were not dismissed pursuant to a decision by the United States Attorney (as designee of the Attorney General) to exercise the power under 19 USC § 1616a (a) to "seek dismissal of the [forfeiture] complaint in favor of forfeiture under State law." Rather, the federal court granted motions by defendants— not an application by the Government, as contemplated by 19 USC § 1616a (a)—for summary judgment invalidating the order of forfeiture as to them, over the vigorous opposition of the United States. Only after the forfeiture proceeding had already been dismissed as against defendants' funds, at defendants' instance and over the federal government's objection, did the United States Attorney decide to transfer the funds to plaintiff. Thus, even assuming that 19 USC § 1616a was potentially applicable in the 18 USC § 982 criminal forfeiture proceedings involving defendants' funds, those proceedings were not "discontinued or dismissed under" section 1616a, as required to authorize the United States to "transfer the seized property to the appropriate State or local official" pursuant to 19 USC § 1616a (b) (1).

In sum, defendants' funds were brought into New York by a transfer from the federal government to plaintiff that Supreme Court had no power to order. That transfer effectively contravened the order of the New Jersey federal court that had jurisdiction of those funds at the time, and the transfer has not been

---

**6.** Although this statute appears in title 19 of the United States Code, entitled "Customs Duties," it may be made applicable to criminal forfeiture proceedings under 18 USC § 982 (the statute under which the federal government seized defendants' bank accounts) by a series of incorporations by reference (*see* 18 USC § 982 [b] [1] ["The forfeiture of property under this section . . . shall be governed by the provisions of" 21 USC § 853, with an exception not relevant here]; 21 USC § 853 [j] ["Except to the extent that they are inconsistent with the provisions of this section, the provisions of section 881 (d) of this title shall apply to a criminal forfeiture under this section"]; 21 USC § 881 [d] ["The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; (and) the disposition of such property . . . shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof"]).

shown to have been authorized by any provision of federal law. Since any jurisdiction Supreme Court possessed to enter the August attachment order necessarily arose from the prior extrajudicial transfer of the funds into New York, it appears that the flaws of the June transfer extend to the August attachment order that would not have been possible but for that transfer. We recognize that the Court of Appeals has held that a second attachment order may be allowed to cure a purely procedural defect in a prior attachment order (*see Mojarrieta v Saenz*, 80 NY 547 [1880]). That principle, however, has no application here, where the property and garnishee in question were beyond the reach of the first attachment order, and the second attachment order is jurisdictionally predicated on what was, in effect, an extrajudicial seizure.

Even if it could be argued that the August attachment order was nonetheless technically acceptable, it cannot be said that, under these circumstances, Supreme Court abused or improvidently exercised its discretion in declining to confirm the August attachment order (*see* CPLR 1312 [3] ["A court *may* grant an application for a provisional remedy" under article 13-A if proper showing is made (emphasis added)]; *cf.* CPLR 6201 [under CPLR article 62, attachment "*may* be granted" if proper showing is made (emphasis added)]; *J.V.W. Inv. Ltd. v Kelleher*, 41 AD3d 233, 234 [2007] [whether to grant an attachment under CPLR article 62 is discretionary upon proper showing]). Thus, there is no basis for setting aside Supreme Court's vacatur of the August attachment order.

We also affirm Supreme Court's dismissal of the complaint for lack of personal jurisdiction, based on invalid service of process. As to the individual defendants, all of whom are Brazilian, it is true that the Inter-American Convention on Letters Rogatory, to which the United States and Brazil are signatories, does not provide the exclusive means by which a plaintiff resident in one signatory nation may serve process on a defendant residing in another signatory nation (*see Kreimerman v Casa Veerkamp, S.A. de C.V.*, 22 F3d 634 [5th Cir 1994], *cert denied* 513 US 1016 [1994]; *Laino v Cuprum S.A. de C.V.*, 235 AD2d 25 [1997]). The nonmandatory nature of the Inter-American Convention does not mean, however, that otherwise applicable principles of international comity are displaced, so that United States courts must condone service of process on persons within signatory nations by means that violate those nations' laws (*see Kreimerman*, 22 F3d at 643-644 ["Plaintiffs who elect not to avail

themselves of the Convention machinery assume the risk that other legal principles, like the principle of international comity, might hinder their establishment of jurisdiction over the defendants"]). In *Kreimerman*, for example, the Fifth Circuit, while holding that the means of service provided by the Inter-American Convention were not exclusive, directed the district court, upon remand, to consider whether service pursuant to the Texas long-arm statute "comport[ed] with principles of comity" (22 F3d at 647; *see also id.* at 644 ["whether service of process under the Texas Long-Arm Statute on defendants residing in Mexico contravenes notions of comity" was among the "considerations . . . for the district court on remand"]).

Here, as plaintiff concedes, "Brazilian law requires that service of process by foreign nations be made pursuant to a letter rogatory or a letter of request transmitted through diplomatic channels" (*Commodity Futures Trading Commn. v Nahas*, 738 F2d 487, 494 [DC Cir 1984]). It is uncontroverted that service was not made in this manner here. We therefore agree with Supreme Court that the principle of comity counseled granting the motion to dismiss so as not to condone service of the process of the New York courts in Brazil by means offensive to Brazilian law.

The corporate defendants are mostly incorporated in the British Virgin Islands (BVI), a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS No. 6638 [1965]). Although plaintiff now argues that he served the BVI-incorporated defendants in accordance with the Hague Convention, he did not make this argument before the Supreme Court. Therefore, it is not preserved. To the extent that plaintiff served the corporate defendants by delivering the process to corporate representatives in Brazil, the corporations, like the individual defendants, have standing to object to such service by means that violate Brazilian law. We note that plaintiff does not appear to argue that any defendants failed to preserve the objection to the manner in which service of process was effected in Brazil.

Finally, we are also unpersuaded by plaintiff's argument that he effected service in accordance with the Mutual Legal Assistance Treaty on Criminal Matters (MLAT) between the United States and Brazil. Plaintiff does not claim to have complied with the procedures specifically prescribed by MLAT, and, in our view, he has not demonstrated that he effected service in accordance with a "bilateral arrangement, agreement, or practice" within MLAT's contemplation.

Accordingly, the order and judgment (one paper), of the Supreme Court, New York County (Martin Shulman, J.), entered February 27, 2007, which denied plaintiff's motion to confirm an attachment order dated August 2, 2006, granted defendants' cross motions to vacate the same attachment order and to dismiss the complaint, dismissed the complaint with prejudice and directed plaintiff to return to defendants all assets being held pursuant to the attachment order, should be affirmed, without costs. Appeal from order, same court and Justice, entered February 15, 2007, which denied plaintiff's ex parte application to file affidavits of service out of time and have them deemed timely filed, nunc pro tunc, should be dismissed, without costs, as taken from an order not appealable as of right.

SULLIVAN, BUCKLEY and MALONE, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered February 27, 2007, affirmed, without costs. Appeal from order, same court, entered February 15, 2007, dismissed, without costs.