[898 NE2d 929, 869 NYS2d 886]

ROBERT M. MORGENTHAU, as District Attorney of New York County, Appellant, v AVION RESOURCES LTD. et al., Respondents.

Argued October 15, 2008; decided November 20, 2008

## POINTS OF COUNSEL

*Robert M. Morgenthau, District Attorney,* New York City (*Michael S. Morgan* and *Mark Dwyer* of counsel), appellant pro se. I. The Appellate Division erred in holding that District Attorney Morgenthau was required to comply with both New York and Brazilian law to effect service of process upon defendants. (*Milliken v Meyer,* 311 US 457; *Dobkin v Chapman,* 21 NY2d 490; *Kelly v Lewis,* 220 AD2d 485; *Franklin v Winard,* 189 AD2d 717; *Delagi v Volkswagenwerk AG of Wolfsburg, Germany,* 29 NY2d 426; *Public Adm'r of County of N.Y. v Royal Bank of Can.,* 19 NY2d 127; *Frummer v Hilton Hotels Intl.,* 19 NY2d 533; *Supreme Merchandising Co. v Kinzoku Co.,* 121 AD2d 193; *Rio Props., Inc. v Rio Intl. Interlink,* 284 F3d 1007; *Umbenhauer v Woog,* 969 F2d 25.) II. The Appellate Division erred in holding that service upon defendants in Brazil was not made in accordance with the Mutual Legal Assistance Treaty in Criminal Matters. (*Matter of Commodity Futures Trading Commn. v Nahas,* 738 F2d 487; *Air France v Saks,* 470 US 392; *United States v Real Prop. Located at 22 Santa Barbara Dr.,* 264 F3d 860; *United States v All Funds in Account Nos. 747.034/278,* 141 F Supp 2d 548, 295 F3d 23; *Societe Nationale Industrielle Aerospatiale v United States Dist. Court for Southern Dist. of Iowa,* 482 US 522; *Itel Containers Int'l Corp. v Huddleston,* 507 US 60; *Foster v Neilson,* 2 Pet [27 US] 253; *Long v State of New York,* 7 NY3d 269.)

*Howrey LLP,* New York City (*James G. McCarney* and *Grace*

*L. Chan* of counsel), *Bernard D'Orazio, P.C.* (*Bernard D'Orazio* of counsel), *Gleason & Koatz, LLP* (*John P. Gleason* of counsel), and *Busson & Sikorski* (*Robert Sikorski* and *Berenice Busson* of counsel), for respondents. This action was properly dismissed for insufficiency of service of process. (*Hilton v Guyot,* 159 US 113; *Societe Nationale Industrielle Aerospatiale v United States Dist. Court for Southern Dist. of Iowa,* 482 US 522; *Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi,* 10 NY3d 243; *Ings v Ferguson,* 282 F2d 149; *Persaud v Teaneck Nursing Ctr.,* 290 AD2d 350; *Tadir Air v FGH Realty,* 297 AD2d 230; *Shinn v Catanzaro,* 1 AD3d 195; *Sam v Town of Rotterdam,* 248 AD2d 850; *141 E. 47th St. Assoc. v ABR Mgt.,* 225 AD2d 341; *Bingham v New York City Tr. Auth.,* 99 NY2d 355.)

### OPINION OF THE COURT

Ciparick, J.

In this civil forfeiture action, we are asked to determine whether service of process pursuant to CPLR 313 on defendants in a foreign country is sufficient to confer personal jurisdiction or whether one must additionally satisfy the service requirements of that foreign locale. Because compliance with CPLR 313 alone constitutes proper service upon foreign defendants where, as here, no treaties or international agreements supplant New York's service requirements, and because principles of international comity do not mandate a different result, service was sufficient. Plaintiffs were not compelled to serve defendants in accordance with the service requirements of the foreign nation, Brazil, via letters rogatory.

## I.

The genesis of this appeal is a forfeiture proceeding initiated by plaintiff, New York County District Attorney Robert M. Morgenthau, seeking to obtain proceeds of an allegedly illegal international money transfer scheme engaged in by defendant depositors, operating out of Brazil. Defendants allegedly transferred money from Brazil to a Manhattan bank in violation of Brazilian monetary regulations and New York banking laws. Many of the defendants were indicted by a New York County grand jury and charged with violating Banking Law § 650 (2) (b) (1). Along with these pending indictments, plaintiff instituted this CPLR article 13-A forfeiture proceeding in Supreme Court, seeking $636,924,865 in alleged proceeds and

instrumentalities from the defendant depositors' criminal, international banking activities[1] (*see* CPLR 1311 [8]).

Before plaintiff's involvement in this matter, federal agents uncovered this alleged operation, which took place during a six-month period in 2002. Defendants utilized a money transfer station[2] to transfer money from Brazil to the United States in violation of Brazilian currency laws. A bank employee in Manhattan received the money and set up parallel accounts at her bank.[3] In 2002, after discovering these transfers and investigating the matter further, federal authorities obtained ex parte warrants from the United States District Court for the District of New Jersey, authorizing a seizure of just over $21 million, which had been deposited into the New York bank. The Government then transferred the funds to an undisclosed account within its control and obtained a criminal forfeiture order to freeze the money. Defendants moved in District Court to vacate that order. The court held that the Government had failed to demonstrate a rightful claim to the money and ordered that control of the funds be relinquished.

Subsequently, federal authorities approached District Attorney Morgenthau to ascertain his interest in proceeding with New York State prosecutions against defendants. On June 20, 2006, plaintiff commenced this civil forfeiture action pursuant to CPLR article 13-A and Supreme Court signed an ex parte temporary restraining order to freeze defendants' assets. Later that day, plaintiff secured an order of attachment, also ex parte.[4] In response, defendants claimed that plaintiff had failed to timely satisfy the order by failing to confirm it within five days as required by statute. Plaintiff then obtained a second order of attachment, claiming that any untimeliness in confirming the first order became moot. On August 8, 2006, Supreme Court

---

**1.** Simultaneously, the Brazilian government is investigating and prosecuting many of the defendants for violations of its laws. According to plaintiff, each of the individual defendants has been arrested and charged in Brazil.

**2.** Money transfer stations in Brazil are known as "casas de cambio" or "doleiros."

**3.** The bank employee was arrested, charged and ultimately pleaded guilty in United States District Court for the District of New Jersey to charges pertaining to the filing of false tax returns and operating a money transfer operation without proper licensing. As part of the plea agreement, she forfeited any interest, title or right to the seized proceeds.

**4.** On June 20, 2006, plaintiff served the attachment order upon the New York City office of the United States Department of Homeland Security, Customs and Border Patrol Service, who then transferred $17.7 million to a bank under plaintiff's control.

vacated the June 20 attachment order, and thereafter defendants moved to quash the second order of attachment.

During July 2006, plaintiff served 14 individual defendants and representatives of five corporate defendants in Brazil.[5] As for certain defendants who allegedly could not be reached by personal service, plaintiff served their respective attorneys pursuant to an August 10 order of Supreme Court, permitting the use of alternative service methods under CPLR 308 (5), 311 (b) and 313. After defendants were indicted, plaintiff allegedly served many of them by mailing the summons and complaint to their attorneys. Most of the remaining defendants were served personally in Brazil by Brazilian law enforcement officials under an agreement with local New York authorities. Four other individuals were served under New York service procedures pursuant to CPLR 308 (2) and (4) via "delivery and mail" or "nail and mail." Because service on those four defendants was not completed in a timely fashion, they are not affected by our holding today.

On February 8, 2007, Supreme Court vacated the second attachment order, noting that at the time the order was issued the funds were located beyond the court's jurisdiction, in New Jersey. Additionally, Supreme Court dismissed the complaint, concluding that plaintiff's service of process failed to comply both with service requirements prescribed by the Inter-American Convention on Letters Rogatory and the service requirements of Brazil, which utilizes only letters rogatory or a letter of request transmitted through diplomatic channels, and with principles of comity.

The Appellate Division affirmed, finding no abuse of discretion in Supreme Court's decision to decline to confirm the attachment orders (49 AD3d 50 [2007]). The court further held that plaintiff's service procedures were improper because they did not comply with Brazilian law and failed to defer to principles of international comity.[6] Finally, the court stated that plaintiff did not effectuate service in accordance with the Mutual Legal Assistance Treaty in Criminal Matters, because serving defendants by Brazilian law enforcement authorities under an informal agreement with New York law enforcement authorities

**5.** Several corporate defendants incorporated in the British Virgin Islands were apparently served in their corporate capacity, as authorized representatives or agents in Brazil.

**6.** The court did not reach the validity of service of process by plaintiff pursuant to the CPLR.

did not comply with the treaty. The Appellate Division certified the following question: "Was the order of this Court, to the extent that it affirmed the order of the Supreme Court . . . properly made?"[7] We answer that certified question in the negative and reinstate the complaint.[8]

## II.

Defendants argue that plaintiff's service was improper because it offends notions of international comity and requirements of international treaties and Brazilian law that service in Brazil be made exclusively via letters rogatory. Plaintiff argues that he was not obligated to serve defendants by letters rogatory because service made under a means recognized by CPLR 313 complies with due process requirements and constitutes proper service upon defendants outside of this state—there being no treaty or international agreement requiring otherwise. Plaintiff further argues that principles of comity do not warrant the importation of another country's service of process rules. We agree with plaintiff that service pursuant to CPLR 313 is sufficient.

We begin with the words of the statute:

"A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302, or his executor or administrator, may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state, territory, possession or country in which service is made or by any duly qualified attorney, solicitor,

7. The Appellate Division, in the same order, also dismissed an appeal from a Supreme Court order denying plaintiff's ex parte application to file affidavits of service out of time and have them deemed timely filed, nunc pro tunc. This part of the Appellate Division order is not within the scope of the certified question and is not before us.

8. In May 2008, during the pendency of this appeal, the United States District Court for the District of Columbia ordered plaintiff to transfer the seized money to federal authorities pursuant to a request from the Brazilian government. Abiding by that order, plaintiff transferred all the money he had under his control to the federal authorities, where it remains. Thus, the issue relating to the validity of the attachment order has been mooted, but the service of process issue remains ripe for disposition.

barrister, or equivalent in such jurisdiction" (CPLR 313).[9]

"As a general proposition, we need not look further than the unambiguous language of the statute to discern its meaning" (*Jones v Bill*, 10 NY3d 550, 554 [2008]). In doing so, we look not only at what the statute requires, but also at what it does not require. Absent in the plain text is any requirement to fulfill a foreign locale's service of process requirements in order to effectuate service in a New York action upon a defendant in another country.

As we stated in *Dobkin v Chapman* (21 NY2d 490, 501 [1968]), the words of CPLR 313 are "clear and unqualified; service may be made without the State . . . 'in the same manner as service is made within the state.'" This straightforward rule advances the statute's purpose:

> "[T]he joint report of the Senate and Assembly committees . . . noted, in so many words, that service outside of New York . . . could be effected 'in any manner that is permitted within the state' and that '[t]he permissive methods of service without the state have been increased in order to enhance the possibility of acquiring *in personam* jurisdiction over non-residents subject to our courts' jurisdiction . . .' (Fifth Preliminary Report, N. Y. Legis. Doc., 1961, No. 15, pp. 271-272)" (*id.* at 501).

CPLR 313, therefore, has both the intention and effect of "remov[ing] state lines, and the plaintiff is to use the service methodologies of CPLR 308, 309, 310, 311, and 312-a, etc. wherever the defendant (or person authorized to accept service on defendant's behalf) may be found" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 313, quoting Siegel, NY Prac § 100, at 168 [3d ed 1999] [internal quotation marks omitted]).

Neither do principles of comity compel a different result. The doctrine of comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states" (*Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi*, 10 NY3d 243,

---

**9.** Rule 4 (f) (3) of the Federal Rules of Civil Procedure is in accord with CPLR 313, permitting a foreign defendant to be served by any method of court-ordered service, provided that the method of service is not prohibited by international agreement (*see Rio Props., Inc. v Rio Intl. Interlink*, 284 F3d 1007 [9th Cir 2002]).

247 [2008]). Whether to apply the doctrine lies in the sound discretion of the court (*id.*). We have typically analyzed the doctrine in the context of enforcement in New York of judgments issued by foreign countries under CPLR article 53 (*see e.g. id.*; *Sung Hwan Co., Ltd. v Rite Aid Corp.*, 7 NY3d 78 [2006]). While we have, on occasion, addressed comity principles in cases where a party to New York litigation is asking a New York court to give effect to the laws of another jurisdiction (*see e.g. Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65 [2006]), we have never applied the doctrine to import the laws of a foreign country into a New York lawsuit—and we decline to do so in this case.

Thus, we need not apply comity principles to service of process issues where the CPLR's requirements of service upon foreign defendants are fulfilled, as they are here (*see Banco do Commercio e Industria de Sao Paolo v Esusa Engenharia e Construcoes*, 173 AD2d 340, 341 [1st Dept 1991] [because defendants admitted they were served with process in Brazil in accordance with the requirements of CPLR 308 by an officer of the court in Brazil, the motion for defective service failed]; *Rio Props., Inc.*, 284 F3d at 1014 [service in compliance with the federal rules is not invalidated even if it is made in a foreign country where such service is not utilized]; *Umbenhauer v Woog*, 969 F2d 25, 32-33 [3d Cir 1992] [same]). Thus, comity is not an additional hurdle for a plaintiff to overcome in serving a party in a foreign country, and defendants' claim that plaintiff should have complied with Brazilian law, which requires that service of process by a foreign party upon a party domiciled in Brazil must be made by letters rogatory, is without merit. A New York court's ability to exercise personal jurisdiction over a Brazilian domiciliary, where service is made in accordance with the CPLR, should not be so limited.

Where there exists a treaty requiring a specific form of service of process such as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Service Convention), that treaty, of course, is the supreme law of the land and its service requirements are mandatory (*see* US Const, art VI, cl 2; *Volkswagenwerk Aktiengesellschaft v Schlunk*, 486 US 694 [1988]). But the Hague Service Convention is not implicated in connection with service on the Brazilian nationals because Brazil is not a signatory to that convention.

Both the United States and Brazil are signatories to the Inter-American Convention on Letters Rogatory (reprinted following

28 USCA § 1781). Article 2 of that treaty does not mandate, however, that letters rogatory be the exclusive means of service on a party in Brazil. As stated in *Kreimerman v Casa Veerkamp, S.A. de C.V.* (22 F3d 634, 640-642 [5th Cir 1994]):

> "[N]othing in the language of the Convention expressly reflects an intention to supplant all alternative methods of service. Rather, the Convention appears solely to govern the delivery of letters rogatory among the signatory States . . .

> "[T]he text of the Convention strongly indicates, not that the Convention preempts other conceivable methods of service, but that it merely provides a mechanism for transmitting and delivering letters rogatory when and if parties elect to use that mechanism."

Consequently, the Letters Rogatory Convention allows for service of process pursuant to a state statute (*see Laino v Cuprum S.A. de C.V.*, 235 AD2d 25, 29 [2d Dept 1997]).[10] Here, that statute is CPLR 313.

Since a New York plaintiff need not comply with foreign law absent a treaty, we must lastly consider whether defendants were properly served under New York law. Individual defendants were served in Brazil under CPLR 313 and 308 (1), or they were served through their lawyers under alternative service pursuant to CPLR 308 (5). Plaintiff served corporate defendants by personal delivery to an authorized representative in Brazil under CPLR 311 (a) (1), or through their lawyers under the alternate service order pursuant to CPLR 311 (b).[11] We thus conclude that all due process requirements were met and proper service upon defendants, save the four served pursuant to CPLR 308 (2) and (4), was effected. Consequently, that portion of the Appellate Division decision that affirmed Supreme Court's dismissal of the forfeiture action should be reversed.

---

**10.** Plaintiff argues alternatively that he complied with Brazilian service laws by serving defendants in Brazil under an informal agreement he maintained with Brazilian law enforcement authorities, pursuant to the Mutual Legal Assistance Treaty in Criminal Matters, to which the United States and Brazil are both signatories. We need not reach this issue.

**11.** Although not argued by either party in Supreme Court and held to be unpreserved by the Appellate Division, it is alleged that those corporate defendants incorporated in the British Virgin Islands were served in conformity with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, a treaty to which the United States and the British Virgin Islands are signatories.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, with costs to plaintiff, by reinstating the complaint and, as so modified, affirmed, and the certified question answered in the negative.

Chief Judge KAYE and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order, insofar as appealed from, modified, etc.