OPINION OF THE COURT
Saliann Scarpulla, J.
Plaintiff Barclays Bank PLC (Barclays) brings this action against defendant Paul Kemsley (Kemsley) for breach of contract in connection with a loan agreement. In motion sequence No. 002, Barclays seeks summary judgment against Kemsley on its breach of contract claim. In motion sequence No. 004, Kemsley seeks summary judgment dismissing the complaint based on the principle of comity and the recognition of a bankruptcy discharge granted in his favor in the United Kingdom. The motions are consolidated for disposition.
Background
The following facts are undisputed, except as otherwise indicated. Barclays is a banking institution organized under the laws of England and Wales. Kemsley is a UK citizen currently residing in New York, where he relocated from England in about 2010. On January 13, 2012, Kemsley commenced a bankruptcy proceeding (UK bankruptcy) in the High Court of Justice, Chancery Division, Bankruptcy Court (UK Bankruptcy Court). Kemsley’s petition was accompanied by a statement of affairs that, among other things, scheduled Barclays as an unsecured creditor in the amount of £5 million (Barclays debt).
Barclays was informed of Kemsley’s UK bankruptcy and the scheduled Barclays debt. Barclays participated in the UK bankruptcy proceeding, including negotiating with the UK Trustees *775 with respect to the investigation into Kemsley’s bankruptcy estate and his potential discharge from bankruptcy. However, Barclays purposefully chose not to submit a proof of claim against Kemsley’s UK bankruptcy estate.
On March 13, 2013, Kemsley and the UK Trustees entered into an income payments agreement which obligates Kemsley to pay to the UK Trustees for the benefit of his bankruptcy creditors — including Barclays — a percentage of his net income over the three years following his discharge. On March 26, 2012, the UK Bankruptcy Court entered an order adjudging Kemsley to be bankrupt pursuant to the United Kingdom’s Insolvency Act (1986, ch 45 [Gr Brit]) (UK discharge). Thereafter, on April 21, 2012, Mark Fry and Kirstie Provan were appointed as joint trustees of Kemsley’s bankruptcy estate (UK Trustees).
Despite its participation in the pending UK bankruptcy, on March 1, 2012, Barclays commenced this New York action seeking recovery of the Barclays debt under breach of contract and unjust enrichment theories. On August 21, 2012, during a temporary stay in this action, the UK Trustees filed a chapter 15 petition (11 USC) with the United States Bankruptcy Court, Southern District of New York (NY Bankruptcy Court)[1] seeking recognition of the UK bankruptcy as a “foreign main proceeding.” The UK Trustees also sought to stay all actions against Kemsley in the US so that the UK Trustees could investigate and preserve Kemsley’s US assets, if any, for the benefit of all of his creditors, including Barclays. Barclays opposed the chapter 15 petition.
By order dated March 22, 2013, the NY Bankruptcy Court (Peck, J.) declined to recognize the UK bankruptcy proceeding, either as a “foreign main proceeding” or “foreign nonmain proceeding” (nonrecognition order). (See In re Kemsley, 489 BR 346 [SD NY 2013].) In his decision, Judge Peck found that recognition was not appropriate because the UK was not Kemsley’s center of main interests, as required in 11 USC § 1517. Judge Peck further noted that this was the first contested matter involving recognition of an individual’s foreign insolvency case to be decided in the Southern District of New York. Judge Peck stated that “Barclays actively contests recognition presumably with the objective of avoiding the consequences of imposition of the automatic stay and retaining control of the state court litigation.” (Id. at 350.)
*776 Because the parties disputed the meaning and effect of the nonrecognition order, on May 15, 2013 Barclays moved the NY Bankruptcy Court to reopen the chapter 15 case and to clarify the nonrecognition order. In its motion, Barclays argued that the nonrecognition order had a preclusive effect such that Kemsley himself could not now directly (as opposed to through the foreign bankruptcy estate representative) ask the New York Supreme Court to recognize the UK discharge on the basis of comity. Kemsley argued in opposition that nothing in the language of chapter 15 precluded him from directly asking this court to recognize the UK discharge based on comity.
At a hearing on June 5, 2013 (comity hearing), Judge Peck stated that neither the Bankruptcy Code (11 USC) nor the nonrecognition order impaired Kemsley himself from seeking comity with respect to his UK discharge in the courts of the United States, including the state courts. The NY Bankruptcy Court denied Barclays’ motion for clarification in a decision dated June 25, 2013.
Thereafter, in November 2012, Kemsley asked the UK Bankruptcy Court to issue an anti-suit injunction to enjoin Barclays from proceeding with lawsuits against him in the United States (in New York and Florida state courts), on the theory that such lawsuits violated his rights as a bankrupt in the UK. Barclays opposed the request for an injunction and participated in the hearing before the UK Bankruptcy Court that took place on March 8 and 11, 2013. The UK Bankruptcy Court denied Kemsley’s request and subsequently issued a decision, dated May 15, 2013, reflecting the denial (UK injunction decision). The UK injunction decision did not address issues concerning the application of international comity to the United States proceedings. Instead, it deferred to the United States state courts on the question of whether Barclays should be prohibited from proceeding there.
With the foregoing facts and proceedings in mind, I will now consider the parties’ motions for summary judgment.[2]
*777 Discussion
With respect to Kemsley’s motion (sequence No. 004) which requests this court to recognize the UK discharge in accordance with common-law principles of comity, Barclays argues that chapter 15 of the United States Bankruptcy Code preempts state common law in this area, and this court should not grant comity with respect to the UK discharge issued by the UK Bankruptcy Court. Moreover, Barclays insists that even if chapter 15 of the Bankruptcy Code did not preempt state law, this court should exercise its discretion by not granting comity based on the “unusual circumstances” of this case.
Federal Preemption
Barclays argues that state common law on the granting of comity is preempted by section 1509 (c) of the United States Bankruptcy Code which provides, in relevant part, that “[a] request for comity ... by a foreign representative in a court in the United States other than the court which granted recognition shall be accompanied by a certified copy of an order granting recognition under section 1517.” (11 USC § 1509 [c] [emphasis added].) Section 1509 (d) provides that “[i]f the court denies recognition under this chapter, the court may issue any appropriate order necessary to prevent the foreign representative from obtaining comity . . . from courts in the United States.” (11 USC § 1509 [d] [emphasis added].) Because the NY Bankruptcy Court denied the UK Trustees’ application for recognition of the UK discharge, Barclays asserts that these provisions of chapter 15 “clearly indicate that, following the denial of a Chapter 15 petition with respect to a particular foreign proceeding, it would not be appropriate for any court in the United States to recognize or grant comity to that foreign proceeding.” (Barclays’ mem in opp at 8.)
Barclays’ arguments here are substantially the same as the arguments it made before the NY Bankruptcy Court in connection with its motion for clarification. On the record during the June 5, 2013 comity hearing, Judge Peck noted that Barclays’ argument was “one of first impression,” and that the requested relief was, in essence, under section 1509 (d) of the Bankruptcy Code, “to have [the NY Bankruptcy Court] interdict and preempt a defense by Mr. Kemsley, in his personal capacity, with respect to state court litigation that was pending prior to the [UK] trustee’s petition for recognition under Chapter 15.” (Comity hearing tr at 28-29.) In that regard, Judge Peck stated that “all of the provisions of Section 1509 deal with rights of the foreign representative” and that
*778 “[¡looking literally at the language of Section 1509 (d), which deals, literally, with the situation of nonrecognition, it is apparent from the plain language that the consequence of nonrecognition applies only to prevent the foreign representative from obtaining comity or cooperation from courts in the United States, and does not, by its literal terms, preclude the foreign debtor from asserting an entitlement to comity . . .
“I see nothing in Section 1509 (d) that, read literally, would in any way impair the ability of Mr. Kemsley to seek comity with respect to his U.K. discharge. However, my comments are by no means intended to limit the ability of Barclays to make the very same arguments that were made here, in state court, nor are they intended in any way to affect the ability of Mr. Kemsley, through counsel, to raise whatever arguments are appropriate in other courts of competent jurisdiction.
“It is my view that once recognition has been denied, this court does not have residual powers to recognize, except with respect to the foreign representative, to the extent that some party may seek to obtain relief as to a foreign representative that is seeking to act in an ultra vires capacity, in effect, taking action that is not authorized by virtue of recognition.” {Id. at 28-31 [emphasis added].)
Thus, the NY Bankruptcy Court rejected Barclays’ argument that chapter 15, by its terms, preempts New York common-law principles of international comity as applicable to foreign debtors.
Kemsley argues that the foregoing statements by the NY Bankruptcy Court should be given collateral estoppel effect. However, Judge Peck made clear that, having already denied recognition of the UK bankruptcy, the NY Bankruptcy Court did not have “residual powers” to exercise with respect to the question raised by Barclays’ motion for clarification, and that the parties were free to make the same arguments before this court. Thus, Judge Peck’s observation that there is “nothing in Section 1509 (d) that, read literally, would in any way impair the ability of Mr. Kemsley to seek comity with respect to his U.K. discharge” is not binding on this court.
Nevertheless, Judge Peck’s observations and interpretation of chapter 15 are highly persuasive, particularly in this *779 case of first impression. Judge Peck properly noted that the plain language of chapter 15 applies only to a “foreign representative” such as a trustee. There is no mention of individual debtors in chapter 15, nor any indication that chapter 15 is applicable to foreign bankruptcy discharge orders issued to individual debtors. Accordingly, I adopt the instructive view and opinion of Judge Peck, that chapter 15 of the Bankruptcy Code does not preempt New York common-law principles of international comity as applied to foreign bankruptcy discharge orders issued to individual foreign debtors.
This Court’s Discretionary Power in Granting Comity
Barclays argues in the alternative that even if chapter 15 does not preempt state law here, I should exercise my discretion by not granting comity to the UK discharge due to the “unusual . . . circumstances” of this case. (Barclays’ mem in opp at 10.) For instance, Barclays alleges that Kemsley is trying to evade his creditors while protecting his substantial assets in the United States beyond the reach of the UK Trustees.[3]
Barclays also emphasizes that the UK Trustees have no practical means of investigating and recovering Kemsley’s US assets, which it contends would lead to Kemsley’s unjust enrichment. Barclays claims that it has agreed to transfer the US assets it recovers to the UK Trustees, minus its reasonable costs and expenses. Finally, Barclays argues that comity should not be granted because the UK Bankruptcy Court, in denying Kemsley’s request for an anti-suit injunction, stated in the UK decision that it will not intervene in this action.
International comity is “the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.” (Hilton v Guyot, 159 US 113, 164 [1895]; see also Morgenthau v Avion *780 Resources Ltd., 11 NY3d 383, 389-390 [2008] [“The doctrine of comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states” (internal quotation marks and citation omitted)].) The doctrine is applied not as “an imperative obligation of courts but rather is a discretionary rule of practice, convenience, and expediency.” (Royal & Sun Alliance Ins. Co. of Canada v Century Intl. Arms, Inc., 466 F3d 88, 92 [2d Cir 2006] [internal quotation marks and citations omitted]; Morgenthau, 11 NY3d at 390 [“Whether to apply the doctrine lies in the sound discretion of the court”].)
“American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings.” (Victrix S.S. Co., S.A. v Salen Dry Cargo A.B., 825 F2d 709, 713 [2d Cir 1987]; see also JP Morgan Chase Bank v Altos Homos de Mexico, S.A. de C.V, 412 F3d 418, 424 [2d Cir 2005] [noting that the Second Circuit has “repeatedly held that US courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding”].) Recognition of international bankruptcy orders and judgments is particularly needed because “the equitable and orderly distribution of a debtor’s property requires assembling all claims against the limited assets in a single proceeding” and that “deference to a foreign court of proper jurisdiction is appropriate so long as the foreign proceedings are procedurally fair and do not violate public policy.” (Oui Fin. LLC v Dellar, 2013 WL 5568732, *4, 2013 US Dist LEXIS 146214, *14 [SD NY, Oct. 9, 2013, No. 12-CV-7744] [internal quotation marks and citations omitted]; see also Basile v CAI Master Allocation Fund, Ltd., 39 Misc 3d 1217[A], 2013 NY Slip Op 50649[U], *8 [Sup Ct, Kings County, Apr. 17, 2013] [applying principles of comity and dismissing plaintiffs claim because the alleged debt owed to plaintiff was rejected in defendants’ corporate winding-up proceeding in Bermuda].) “Where a foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, exceptions to the doctrine of comity are narrowly construed.” (Bertisch v Drory, 4 Misc 3d 1023[A], 2004 NY Slip Op 51005[U], *3 [Sup Ct, NY County, June 21, 2004] [internal quotation marks and citation omitted].) Here, Barclays does not dispute that the UK bankruptcy proceeding was procedurally fair and did not violate public policy. It also does not dispute that it was afforded procedural and substantive due process in participating in the UK bankruptcy proceeding, including, among other things, negotiating *781 with the UK Trustees and attending hearings before the UK Bankruptcy Court.[4] Neither does Barclays address the body of case law in which courts have extended comity to foreign bankruptcy judgments and declined to adjudicate claims involved in those proceedings. (See e.g. JP Morgan Chase Bank v Altos Hornos de Mexico, SA. de C.V., 412 F3d 418, 424 [2d Cir 2005]; Victrix S.S. Co., S.A. v Salen Dry Cargo A.B., 825 F2d 709, 713 [2d Cir 1987]; Cunard S.S. Co. Ltd. v Salen Reefer Servs. AB, 773 F2d 452, 456-460 [2d Cir 1985]; Ecoban Fin. Ltd. v Grupo Acerero Del Norte, S.A. de C.V., 108 F Supp 2d 349, 351-353 [SD NY 2000], affd 2 Fed Appx 80 [2d Cir 2001], cert denied 534 US 814 [2001]; Basile v CAI Master Allocation Fund, Ltd., 9 Misc 3d 1217[A], 2013 NY Slip Op 50649[U], *8 [Sup Ct, Kings County 2013]; Bertisch v Drory, 4 Misc 3d 1023[A], 2004 NY Slip Op 51005[U], *3 [Sup Ct, NY County 2004].)
I note that the “unusual circumstances” which Barclays argues require denial of comity here are largely a result of Bar-clays’ own actions. The “unusual” fact that the UK Trustees now may have no practical means of investigating and recovering Kemsley’s US assets for the benefit of all of his UK creditors, including Barclays, is a direct result of Barclays having opposed the chapter 15 proceeding, which was commenced for that very purpose. As Judge Peck noted during the comity hearing,
“Barclays would have been better off ... if it had simply allowed the Chapter 15 petition of the trustee to be recognized in the first instance, by not standing in the way of recognition.
“All parties will recall that during early stages of the contested proceedings with reference to recognition, I urged counsel for Barclays and counsel for the U.K. bankruptcy trustee to endeavor to work out some kind of compromise in which they would work together in a cooperative fashion so as to pursue remedies against Mr. Kemsley’s U.S.-based assets for the benefit of creditors in the U.K. I don’t need to revisit that now, but it seems to me that Barclays may have mousetrapped itself.” (Comity hearing tr at 29.)
While Barclays argues that Kemsley is attempting to evade his *782 creditors and will be unjustly enriched if this court grants comity to the UK discharge, to deny comity would result in greater inequity and would invite foreign creditors, such as Bar-clays, to commence suit in this court to seek recovery outside and in circumvention of their foreign bankruptcy proceedings. Accordingly, comity should be granted as to the UK discharge.
Finally, Barclays contends that “[g] ranting comity to the UK Discharge would not end this breach of contract action [because] th[is] Court would still have to determine whether, under UK law, the discharge operates to release Mr. Kemsley from his debt to Barclays.” (Barclays’ mem in opp at 13.) More specifically, Barclays contends that, pursuant to section 281 (3) of the Insolvency Act (1986, ch 45 [Eng & Wales]), “[a] [discharge does not release the bankrupt from any bankruptcy debt which he incurred in respect of, or forbearance in respect of which was secured by means of, any fraud or fraudulent breach of trust to which he was a party.” (Id.) Barclays asserts in its motion papers that Kemsley made a false statement when he obtained the loan in June 2008 and, because the Barclays debt was incurred “by means of a fraud, the UK Discharge does not operate to release the debt” (Barclays’ mem in opp at 14).
The UK discharge, by its terms, released Kemsley from all of his debts, including the Barclays debt. Indeed, in the UK decision, the UK Bankruptcy Court stated that “[u]nless extended on the application of the [UK] Trustees or the official receiver, Mr. Kemsley would be discharged from bankruptcy at the end of a period of a year, i.e. on 26 March 2013,” and as a result of the discharge, “he will be released from all bankruptcy debts . . . This includes his debt to Barclays”[5] (UK decision ¶ 20; see also Fisher aff in support of Barclays’ opposition ¶ 4). To the extent Barclays now seeks to essentially opt out of the UK discharge on the basis of fraud, it must address itself to the UK Bankruptcy Court rather than to this court.
Based upon all of the foregoing, it is hereby ordered that plaintiff’s motion (sequence No. 002) seeking summary judgment on its breach of contract claim is denied; and it is further ordered that defendant’s motion (sequence No. 004) seeking summary judgment dismissing all claims is granted, and the complaint is dismissed in its entirety.

, The chapter 15 proceeding is captioned In re Paul Zeital Kemsley (Bankr Ct, SD NY, No. 12-13570 [JMP]).

. The court notes that Barclays originally brought its motion for summary judgment (sequence No. 002) prior to the commencement of the chapter 15 proceeding. Barclays’ motion was held in abeyance pending the commencement and resolution of that proceeding, and the parties have not supplemented their original briefing in connection with that motion. However, the parties’ papers submitted in connection with Kemsley’s motion (sequence No. 004) address the relevant facts that have taken place since Barclays first moved, and present the parties’ updated arguments.

. Judge Peck stated that “Mr. Kemsley’s motives here are plain: he wants to block collection remedies by Barclays against him in the United States.” {In re Kemsley, 489 BR 346, 352 [SD NY 2013].) Judge Peck further observed that
“the Debtor, with the aid of surrogates, has been providing indirect financial support to [UK Trustee] Mr. Fry to cover the trustee’s legal expenses in pursuing recognition under chapter 15. . . . This financial support may indicate that the trustee’s petition for recognition is an aspect of a coordinated trans-Atlantic litigation strategy orchestrated by Mr. Kemsley and his advisers to shield Debtor’s assets from enforcement actions by Barclays.” {Id. at 351-352.)

. In fact, Barclays concedes that it “does not dispute the chronology and procedural facts set forth in Mr. Kemsley’s motion papers” at all. (Barclays’ mem in opp at 2.)

. The UK Bankruptcy Court went on to explain that the UK discharge “[did] not affect Barclays’ right to prove ... its debt in the bankruptcy” (UK decision ¶ 20).